**Anderson L. ABERNATHY, Appellant,**

v.

**Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.**

No. 90–1068.

United States Court of Veterans Appeals.

Nov. 13, 1992.

Anderson L. Abernathy, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Stephen A. Berquist, Washington, D.C., were on the pleadings, for appellee.

Before FARLEY, HOLDAWAY and IVERS, Associate Judges.

IVERS, Associate Judge:

On June 3, 1992, the Secretary of Veterans Affairs (Secretary) filed a motion for reconsideration of the May 20, 1992, opinion issued in this appeal. In that decision, the Court vacated and remanded a decision of the Board of Veterans' Appeals (BVA or Board) denying appellant a permanent and total disability rating for pension purposes based on multiple disabilities. In so doing, the Court ruled, inter alia, that the BVA erred by failing to apply the two-step analysis of *Manio v. Derwinski*, 1 Vet.App. 140 (1991). In his motion, the Secretary argues that the *Manio* analysis does not apply to a claim for a permanent and total disability rating for pension purposes. We grant the Secretary's motion for reconsideration and note that his motion for summary affirmance is again before us. Because we agree with the Secretary that the *Manio* analysis should not be applied to claims for pension, as distinguished from claims for compensation, we vacate our decision of May 20, 1992, and issue this opinion in its stead.

Anderson L. Abernathy appeals an August 8, 1990, decision of the BVA which denied him a permanent and total disability rating for pension purposes based on multiple disabilities, including a psychiatric disorder. The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). Because the Board based its denial of the claim, in large part, on March 1989 Department of Veterans Affairs (VA) medical and psychiatric examination reports, the diagnoses of which were deferred, and because the Board did not provide adequate reasons or bases for some of its findings, we vacate the decision of the BVA and remand the case for readjudication consistent with this opinion.

FACTS

The veteran served in the U.S. Army from 1965 to 1967. R. at 1. The veteran was denied a total disability rating by the BVA on September 25, 1985. R. at 2–6. In June 1988, he wrote to the VA seeking to reopen his claim for disability benefits. R. at 21. In his letter, he told the VA that he "would like to know exactly what constitutes new evidence for reopening a claim." *Id.* The record contains no letter of reply from the VA. However, in September 1988, the VA Regional Office (VARO) received letters from Mr. Abernathy's sister and niece describing the veteran's condition. R. at 22–28. Because the veteran's relatives alleged a change in the veteran's behavior upon his arrival home from service, it appeared that the claim being made

was not merely for a total disability rating for non-service-connected disorders, but for service connection for those disorders as well. Indeed, a VA rating board considered the claim as a "[r]eopened [c]laim," and on September 19, 1988, the VARO issued a rating decision which noted the letter from the veteran's sister but concluded that "no new and material evidence has been presented to establish s[ervice] c[onnection] for a [neuropsychiatric] condition." R. at 29. In addition to denying service connection, the VARO, without explanation, denied the veteran a total disability rating for his non-service-connected disabilities. R. at 29. In a letter dated October 19, 1988, the VA informed the veteran that a letter received by the VA from the veteran's sister did not constitute new and material evidence. R. at 33.

In February 1989, Mr. Abernathy's representative wrote to the VARO on the veteran's behalf, noting disagreement with the September 19, 1988, rating decision with regard to the non-service-connected pension benefits. R. at 34–35. The veteran's representative requested that the VA obtain outpatient treatment records from a VA mental hygiene clinic where the veteran had been receiving treatment. *Id.* He also requested that Mr. Abernathy be given a VA medical examination. *Id.*

The VA administered a general medical examination, which included a special psychiatric examination, in March 1989. R. at 68–77. Although the doctors described the veteran's appearance and condition, they deferred diagnoses because they did not have the veteran's claim file at the time of the examination. R. at 69, 71. In this regard, one of the doctors observed that "Mr. Abernathy's C–File is not available. It seems prudent that it be examined prior to making a final diagnosis." R. at 69.

On June 16, 1989, the Regional Office issued a rating decision confirming the prior denial of entitlement to pension benefits. The rating board noted the following non-service-connected disabilities: chronic undifferentiated schizophrenia, competent–30%; laceration, right middle finger–0%; right knee condition–0%; refractive error–

0%; left eye injury–30%; degenerative joint disease, left knee–0%; abdominal laparotomy scar–0%; and a combined rating for non-service-connected disabilities–50%. In addition, the rating board found that Mr. Abernathy's "[d]isability was the result of his own willful misconduct: ALCOHOL ABUSE." R. at 79 (emphasis in original).

The veteran, his brother, and his niece testified at a VARO hearing on November 8, 1989. The hearing officer affirmed the prior rating decisions denying a permanent and total rating. R. at 80–93. In January 1990, the VA received a letter from the veteran disagreeing with the denial of a total disability rating and claiming, for the first time, a hearing problem and a skin rash resulting from exposure to Agent Orange. R. at 98–99.

In its August 1990 decision, the BVA limited its review to the issue of entitlement to a permanent and total disability rating for pension purposes, noting that the claims for service connection for multiple disabilities as a result of Agent Orange exposure had not been developed or certified for appeal. *Anderson L. Abernathy*, BVA 90–04151, at 2 (Aug. 8, 1990). In reviewing the claim, the BVA considered evidence submitted or obtained since the denial of a permanent and total rating by the BVA in 1985. The evidence was as follows: the veteran's application for pension benefits; the statements from the veteran's niece and "two sisters" (letters from a sister and brother are of record); VA outpatient treatment records from a mental health clinic for the period from December 1987 to January 1989; the report of the VA examination conducted in March 1989 (for which diagnoses were deferred); and the transcript from the hearing held in November 1989. *Abernathy*, BVA 90–04151, at 2–3. The Board denied the veteran's claim for a permanent and total disability rating for pension purposes, and the veteran perfected a timely appeal to this Court. *Id.* at 5.

## ANALYSIS

### A.

Section 7104(b) (formerly § 4004(b)) of Title 38 of the United States Code provides:

"Except as provided in section 5108 [formerly § 3008] of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 7104(b). Section 5108 provides: "If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108. In *Manio,* this Court held that

> the BVA must perform a two-step analysis when a veteran seeks to reopen a claim based upon new evidence. First, the BVA must determine whether the evidence is "new and material". 38 U.S.C. [§ 5108]. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old.

1 Vet.App. at 145 (citation omitted) (emphasis in original).

Neither the statute nor the holding of *Manio* specifies a particular type of claim to which the concepts of "finality" and "reopening" apply. However, in his motion for reconsideration, the Secretary notes that "the Court has applied the *Manio* analysis to reopened claims for *service connection*." Secretary's Mot. at 3 (emphasis in original), *citing Kehoskie v. Derwinski,* 2 Vet.App. 31 (1991); *Thompson v. Derwinski,* 1 Vet.App. 251 (1991); *Colvin v. Derwinski,* 1 Vet.App. 171 (1991). Furthermore, the Secretary contends that,

> Conceptually, a claim for service connection involves a question that is essentially static in nature, typically regarding the origin of the veteran's disability, whereas a claim for nonservice-connected pension involves the current nature and severity of disability, taking into account other changing factors such as age, and is therefore fluid in nature.
>
> . . . .
>
> With regard to pension claims, ... a veteran would not normally seek to "reopen" a previously denied claim. In-

stead, entitlement to pension takes into consideration ever-changing factors reflecting permanent and total disability, such as the deterioration of the veteran's physical or mental condition, and increasing age. Evidence is submitted to reflect the severity of the veteran's present condition and its impact on employability, rather than to "reopen" a previously disallowed claim on the basis of new evidence that would elaborate upon the earlier decision. The adjudicators' primary focus in evaluating pension claims is the present condition of the veteran and whether the evidence, including consideration of age, reflects permanent and total disability.

Secretary's Mot. at 3–4.

■ We agree with the Secretary that claims for service-connected benefits or compensation differ from claims for non-service-connected benefits or pension, and that the term "reopening," although occasionally used to refer to other types of claims, applies, in its strictest sense, only to the process of presenting new and material evidence to allow a previously denied claim *for service-connected benefits* to be considered anew. Accordingly, we hold that the *Manio* analysis does not apply to claims for pension benefits.

## B.

Because most of the DISCUSSION AND EVALUATION section of the BVA decision consists of a summary of the March 1989 VA examination reports, it appears that the Board based its denial of the veteran's claim, in large part, on those reports. In so doing, the Board erred because the examination reports were incomplete, given that the doctors had not rendered diagnoses, and the BVA should have awaited their completion before considering them, or it should have ordered new examinations before deciding the veteran's claim. "[I]f the [examination] report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1991); *see Green v. Derwinski,* 1 Vet.App. 121 (1991).

■ In addition, the Court notes that the Board merely listed evidence that it had considered in deciding this claim under the EVIDENCE section in its decision without discussing most of that evidence. This Court has held that the Board must "account for the evidence which it finds to be persuasive or unpersuasive" and provide reasons or bases for its rejection of evidence. *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). Of all the evidence the Board listed in its decision, only the VA medical examination of March 1989 was discussed in any detail. The Board neglected to account for the other evidence, to explain why it found it persuasive or unpersuasive, to analyze its credibility or probative value, or to provide reasons for its implicit rejection. *Gilbert*, 1 Vet.App. at 58–59; *see also Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991). In addition, in denying the veteran's claim for a permanent and total disability rating, the BVA found that

> [t]he most recent medical evidence of record reflects chronic conditions which are not severe enough in nature to permanently prevent the veteran from engaging in all forms of gainful employment consistent with his age, education and work experience.

*Abernathy*, BVA 90–04151, at 4. We note that "[t]he recent medical evidence of record" includes the incomplete 1989 examination reports. Moreover, this perfunctory reason for the conclusion that the veteran's conditions were "not severe enough" to warrant a permanent and total disability rating does not rise to the standard articulated by this Court in *Gilbert* for providing adequate reasons or bases for findings and conclusions reached by the Board. *See Hyder v. Derwinski*, 1 Vet.App. 221, 224 (1991). To reach that standard, the Board is required to explain what specifically in the medical or other evidence of record led the Board to reach such a conclusion.

Finally, the Court notes that the June 16, 1989, rating board, in denying the veteran's claim, found that the veteran's disability was "the result of the veteran's own willful misconduct: ALCOHOL ABUSE." R. at 79 (emphasis in original). With regard to non-service-connected disability pension, the law provides that a pension be paid to a "veteran of a period of war ... who is permanently and totally disabled from non-service-connected disability *not the result of the veteran's willful misconduct....*" 38 U.S.C. § 1521 (formerly § 521) (emphasis added). In its decision, the BVA notes 38 C.F.R. § 3.301(c)(2) which provides in part that "[t]he simple drinking of alcoholic beverage is not of itself willful misconduct...." In its findings of fact, the Board refers to the veteran's "innocently acquired disabilities." It seems clear that the BVA, unlike the rating board below, did not deny the veteran's claim because it found that the veteran's disabilities were the result of his own willful misconduct. However, in its decision, the Board does not discuss this issue. It does not explain why it reached a different conclusion from the rating board concerning willful misconduct, nor does the Board address whether Mr. Abernathy had an alcohol problem and whether the alcohol problem had any relationship to his psychiatric problems. *Abernathy*, BVA 90–04151, at 3, 5. Therefore, we hold that, in readjudicating this claim upon remand, the Board must provide adequate reasons or bases for its findings and conclusions consistent with the standard articulated by this Court's holding in *Gilbert*.

Upon consideration of the record, appellant's informal brief, and the Secretary's motion for summary affirmance, the Court holds that the Secretary's motion is denied, the decision of the BVA is VACATED, and the case is REMANDED for readjudication consistent with this opinion.