**Joseph L. FERAZZOLI, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1308.**

United States Court of Veterans Appeals.

Feb. 1, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

The appellant, World War II veteran Joseph L. Ferazzoli, appeals from a May 29, 1991, decision of the Board of Veterans' Appeals (Board or BVA) denying him entitlement to a total disability rating based on unemployability due to his service-connected disabilities. *Joseph L. Ferazzoli*, BVA 91-____ (May 29, 1991). In his brief, the veteran requests the Court to reverse as clearly erroneous the BVA's May 1990 denial of a total disability rating, hold void ab initio a 1983 decision of the BVA severing the veteran's previous total disability rating based on unemployability, and restore the total disability rating retroactive to 1981. The appellant has submitted a motion for oral argument. The Secretary of Veterans Affairs (Secretary), in his brief, requests affirmance, asserting that there was no error in the Board's May 1990 decision and that the Court is without jurisdiction to review the 1983 BVA decision. Summary disposition is appropriate here because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet. App. 23, 25–26 (1990). The Court will deny the appellant's motion, vacate the May 1991 BVA decision, and remand the matter to the Board for readjudication.

## I. BACKGROUND

The veteran served on active duty from February 1943 to November 1945. R. at 1. While in combat in Italy on November 9, 1944, the veteran was injured when he was struck by enemy shell fragments. R. at 2. A November 13, 1945, report of an Army Board of Medical Examiners indicated that the veteran had suffered multiple compound comminuted fractures of the right knee and leg, resulting in severe ankylosing of the right knee, that he had been hospitalized continuously for over a year—from November 9, 1944, to November 13, 1945,—due to those injuries, and that he had been recommended for discharge due to those injuries. R. at 2.

In 1947, the veteran received service-connected disability ratings for four conditions resulting from his combat injuries—moderate injury to muscle group XVII, right thigh (20% disabling); moderate injury to muscle group XVII, left thigh (20%); ankylosis, right knee (30%); and moderate injury to muscle group XII, right leg (20%). R. at 5. In a June 17, 1959, decision, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) concluded that there had been "clear and unmistakable error" in the disability ratings assigned in 1947 and assigned the following four ratings retroactive to 1946: Residuals of penetrating wounds of the right hip, buttock, and thigh, rated as muscle group XVII, severe (rated 50% disabling); residuals of penetrating wounds of the left buttock and thigh, rated as muscle group XVII, severe (50%); residuals of penetrating wounds of the right knee, leg, and foot, rated as muscle group XII, severe (30%); and residuals of penetrating wounds of the left knee and leg, rated as muscle group XII, moderate (10%). R. at 6. Those ratings resulted in a combined service-connected rating of 90%. R. at 6. In 1967, the veteran submitted a claim for an increased disability rating, asserting that he was unable to hold a job due to his service-connected disabilities. R. at 8, 11, 13. In a May 4, 1967, decision, the RO awarded him a total disability rating based on unemployability due to his service-connected disabilities. R. at 15–16.

In December 1980, the RO informed the veteran that the VA was reviewing his disability ratings pursuant to "a special review of veterans under the age of 60 whose service[-]connected disabilities are

rated less than 100% disabling, but who receive compensation at the 100% rate based on unemployability due to their service[-]connected disabilities." R. at 23. The veteran was examined by a VA physician in January 1981. R. at 27. In a March 18, 1981, decision, the RO concluded that there had been "clear and unmistakable error" in the 1967 RO decision awarding entitlement to a total disability rating and thus severed entitlement, effective May 31, 1981, to a total disability rating—reinstating the 90% rating. R. at 31–33. The veteran appealed that determination to the BVA. R. at 34. In an April 1982 decision, the Board characterized the issue as "[e]ntitlement to a total disability rating [based] on individual unemployability", rather than the propriety of severing the veteran's total disability rating. R. at 42. The Board denied a total disability rating. R. at 46. In a January 1983 reconsideration decision, an expanded panel of the Board again denied a total disability rating. R. at 55.

In 1988, the veteran submitted a claim for a total disability rating based on individual unemployability due to his service-connected disabilities. R. at 56. He asserted that he had not worked since April 1967. R. at 56. In support of his claim, he submitted a November 2, 1988, letter to the RO from Timothy Farrell, stating that he had rejected the veteran for employment several times because the veteran's training in watch repair forty years earlier did not provide him with the skills to repair modern quartz watches, and because the veteran could not be employed as a salesperson because he was unable to stand for any length of time. R. at 60. He also submitted an October 8, 1988, examination report from a private orthopedist, Dr. Abdul Razaq, who stated that he had examined the veteran "for evaluation of disability associated with service-related injuries." R. at 63. Dr. Razaq stated that the veteran had moderate pain in the right hip and right knee, which limited his standing and walking, and that the veteran had restricted ranges of motion in his hips, knees, and back due to his service-connected injuries. R. at 63. He noted that the veteran's past medical history was "significant for mild adult-onset diabetes and mild hypertension." R. at 63. He concluded: "Based on the examination of multiple injuries, and loss of function of the right hip, and especially right knee, I believe patient has total permanent disability and believe that patient should be granted 100% disability. Patient may require total knee replacement if pain and symptoms progress further." R. at 64.

The RO denied the claim on December 6, 1988. R. at 67. In a December 6, 1989, decision, the Board remanded the claim to the RO with instructions to schedule a comprehensive VA orthopedic examination to determine the extent and severity of the veteran's service-connected disabilities. R. at 76. On March 19, 1990, the veteran was given an examination by the same VA physician, Dr. George M. Raus, who had examined him in February 1981. R. at 80. At the time of the examination, the veteran complained of "constant pain in knees and legs, unable to stand or sit for any amount of time, stiffness in both knees and legs". R. at 78. Dr. Raus noted that the veteran wore a right-knee brace and walked with a marked limp and that he hadn't worked in 20 years. R. at 80. His findings included "marked" muscle loss in the right thigh but "good functional strength" remaining in the right thigh muscles and limitations of motion of the right foot, right ankle, and both knees. R. at 81. The diagnosis was: "Post[-]traumatic residuals of right knee, severe degenerative changes and loss of motion with severe symptoms. There is associated loss of motion with stress symptoms of the right ankle." *Ibid.* Pursuant to X-ray findings, Dr. Raus further diagnosed: "Minimal degenerative changes lumbosacral spine and hips—right greater than left. Severe post[-]traumatic degenerative changes right knee. Post[-]traumatic changes right ankle. Multiple retained metallic fragments." *Ibid.* The examiner offered no opinion on the veteran's industrial impairment from the service-connected disabilities.

The RO again denied the veteran's claim on June 19, 1990. R. at 87. The veteran

thereafter submitted a statement to the RO asserting that the examination by Dr. Raus was not a "comprehensive orthopedic examination" as the BVA's remand decision had required. R. at 93.

The veteran then submitted a certified copy of a July 16, 1990, "employability assessment" by John Noble, a vocational consultant employed by the New York State Education Department's Office of Vocational Rehabilitation. R. at 95–96. Mr. Noble stated that the veteran had left high school in the 11th grade and had received prior training and work experience repairing watches and jewelry, and that the veteran's disabilities were the residuals of gunshot wounds to the right hip, buttock, knee, and thigh, and to the left leg, knee, buttock, and thigh. R. at 95. After reviewing medical records prepared by Dr. Razaq, Mr. Noble concluded:

> The veteran is no longer employable in watch repair because of technological changes, i.e., development of *quartz* watches for which he has no training or experience. The only available jobs for which he could qualify by reason of education and experience are of [a] laboring, unskilled variety, areas that are beyond his physical capabilities as a result of limitations imposed by his service[-]connected injuries. Jobs in the local service industries require many of the same physical demands found in laboring/unskilled jobs. In addition, they do not constitute substantially gainful employment, i.e., these jobs do not pay a wage consistent with a reasonable living standard.

R. at 96 (emphasis in original). Mr. Noble stated that the veteran "has to be considered unemployable." *Ibid.* The veteran also submitted the report of physical testing done by Dr. Razaq in August 1990, which indicated that the veteran was not capable of lifting or carrying anything over 10 pounds, and that he could lift or carry items weighing between 0 and 10 pounds only "occasionally (0–33% [of the time])". R. at 99. The reports further indicate that the veteran could not bend, squat, crawl, climb, perform pushing and pulling actions, or use his feet or legs for repetitive move-ment such as operation of a motor vehicle, but he could perform "simple grasping" and "fine manipulating". *Ibid.* It was further stated that in an eight-hour workday, the veteran could sit for two hours, with rests, and could stand or walk for one hour, with rests. R. at 99, 106.

The veteran appeared before a traveling section of the Board on December 10, 1990, and testified under oath that he was unable to sit for more than a half hour without having to get up and move; that he was unable to stand for any length of time; that he wore a knee brace on his right leg all the time and on his left leg 30 to 35 percent of the time; that he had not worked since 1967; and that he has problems with pain in his hands, diabetes, and high blood pressure. R. at 113–23.

In its May 29, 1991, decision, the BVA concluded that the veteran's service-connected disabilities had "been essentially static for decades" and had not required any ongoing treatment, prescribed medication, or hospitalization. *Ferazzoli*, BVA 91–___, at 8. The Board noted that the veteran had "significant" non-service-connected medical conditions, including decreased hearing acuity, diabetes mellitus, hypertension, and problems with his hands. *Id.* at 9. The Board concluded:

> [W]hile the veteran's service-connected disabilities are certainly significant and would preclude employment in areas requiring heavy physical labor, that is not the same as saying that they would preclude all forms of substantially gainful employment. The clinical findings on private examination in October 1988 supported the findings on the VA examination in March 1990. The private examiners' opinions were not necessarily reflected by the clinical findings. It would appear that the veteran's nonservice-connected medical problems and manifestations thereof would be a greater factor in the veteran's ability to obtain and retain employment.

*Ibid.* The Board further concluded that the March 1990 VA examination was sufficiently comprehensive to provide a basis for evaluating the veteran's disabilities in

light of his claim of individual unemployability. *Id.* at 10.

## II. ANALYSIS

### A. Reasons or Bases

 The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1) (formerly § 4004); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990); *Masors v. Derwinski*, 2 Vet.App. 181, 188 (1992). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any evidence favorable to the veteran. *See Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Abernathy v. Principi*, 3 Vet.App. 461, 465 (1992); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991); *Gilbert, supra.* Moreover, the Board may not rely on its own unsubstantiated medical conclusions to reject expert medical evidence in the record; rather, the Board may reject a claimant's medical evidence only on the basis of other independent medical evidence. *See Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991).

 Here, the Board erred in failing (1) to provide an adequate explanation for its implicit rejection of the opinions of a private physician and a vocational consultant that the veteran was permanently and totally disabled and unemployable due to his service-connected conditions (R. at 64, 96); and (2) to provide an adequate basis for its conclusion that the veteran's non-service-connected conditions are "a greater factor" in his ability to obtain or retain employment (*Ferazzoli*, BVA 91-____, at 9).

In his October 1988 examination report, Dr. Razaq concluded, based on evaluation of the veteran's service-connected disabilities, that the veteran had "a total permanent disability" and should be rated 100% disabled. R. at 63–64. In an August 1990 physical testing report, he concluded that the veteran, in an ordinary 8–hour workday, could sit for only two hours, with rests, and could stand or walk for only one hour, with rests. R. at 99. In its May 1991 decision here on appeal, the Board rejected Dr. Razaq's opinion by stating: "The private examiners' opinions were not necessarily reflected by the clinical findings." *Ferazzoli*, BVA 91-____, at 9. The Board, however, provided no explanation as to how Dr. Razaq's findings and conclusions were inconsistent with other "clinical findings" in the record. Therefore, the mere reference to "clinical findings" does not provide an adequate statement of reasons or bases, supported by independent medical evidence, for rejecting Dr. Razaq's medical opinion. *See Colvin, supra; Simon, supra.*

Similarly, the Board failed to provide an adequate explanation for its implicit rejection of vocational consultant Noble's July 1990 "employability assessment" that the veteran was unemployable due to his service-connected disabilities. R. at 95–97. In its summary of the evidence, the Board stated that Mr. Noble's assessment of the veteran's functional limitations was "apparently based on the medical examination by Dr. Razaq in October 1988." *Ferazzoli*, BVA 91-____, at 6. In its "DISCUSSION AND EVALUATION" of the evidence, the Board stated that "the private employability assessment was based on factors separate and apart from VA regulations governing individual unemployability." The Board's failure to explain what those factors were and why, in the Board's judgment, they deprived the Noble employability assessment of probative value is error under 38 U.S.C. § 7104(d)(1). *See Simon, supra; Gilbert, supra.*

Furthermore, if the Board viewed Dr. Razaq's and Mr. Noble's findings and conclusions as inconsistent with the findings on the March 1990 VA examination, the Board was required to provide a statement of the reasons or bases for any conclusion that the VA examination was entitled to greater weight than the other reports. *See Tripp v. Derwinski*, 3 Vet.App. 173, 175

(1992); *Gilbert,* 1 Vet.App. at 57, 59 (BVA must account for the evidence it finds persuasive or unpersuasive and provide analysis of the credibility and probative value of the evidence). That requirement is particularly strong in this case because Dr. Razaq and Mr. Noble both specifically addressed the relationship between the veteran's service-connected disability and his capacity for employment, whereas the 1990 VA examination did not. *See Tripp, supra* (in assigning rating based on industrial impairment, BVA erred in failing to explain why it rejected an examination relating the veteran's symptoms to industrial impairment and relied upon one that did not do so).

The Board also failed to explain the basis for its conclusion that the veteran's non-service-connected disabilities (problem with his hands, decreased hearing, diabetes mellitus, hypertension) were "a greater factor" in his ability to obtain or retain employment. *Ferazzoli,* BVA 91–___, at 9. Such a conclusion must be supported by an adequate statement of reasons or bases and medical evidence. *See Colvin, supra; Gilbert, supra.* In this case, the Board did not point to any evidence pertaining to the severity of his non-service-connected disabilities or their effects on his employability. Furthermore, the fact that the veteran's non-service-connected disabilities may affect his employability does not resolve the issue presented in this case. "The BVA was still required to decide, without regard to the non-service-connected disabilities or his age, whether appellant's service-connected disabilities are sufficiently incapacitating as to render him unemployable." *Pratt v. Derwinski,* 3 Vet.App. 269, 272 (1992); *see also* 38 C.F.R. § 4.16(a) (1991) ("nonservice-connected disabilities ... will be disregarded").

### B. Duty to Assist

■ Where, as here, a claimant has submitted a well-grounded claim for benefits, VA has a duty to assist that claimant "in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a) (formerly § 3007). The duty to assist, in appropriate cases, includes the duty to provide for an examination to evaluate a claimant's disability. *See Tripp,* 3 Vet.App. at 173; *Schafrath v. Derwinski,* 1 Vet.App. 589, 595 (1991); *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991). Where an examination is necessary for evaluation of a disability, VA regulations require that the examination provide a comprehensive and detailed assessment of the claimant's disabilities and their effect upon the claimant's ordinary activity, including employment. *See* 38 C.F.R. § 4.1 (1991) (examinations must place "emphasis upon the limitation of activity imposed by the disabling condition"); 38 C.F.R. § 4.2 (1991) ("if the [examination] report does not contain sufficient detail, it is incumbent on the rating board to return the report as inadequate for evaluation purposes"); 38 C.F.R. § 4.10 (1991) (examiner required to give "full description of the effects of disability upon the person's ordinary activity"); *Schafrath,* 1 Vet.App. at 594.

■ In view of the fact that the 1990 VA examination conducted pursuant to the 1989 BVA remand does not address the effect of the veteran's service-connected disabilities upon his employability, and does not address the impact, if any, of his non-service-connected disabilities upon his employability, that examination is inadequate to support the Board's finding that the veteran is not unemployable due to his service-connected disabilities. Therefore, the duty to assist in this case requires the BVA to order another examination of the appellant, one which adequately addresses the effects of his service-connected disabilities upon his employability. *See Tripp, supra, Schafrath,* 1 Vet.App. at 595; *Green, supra.* If, after assessing the results of such an examination, the Board is "unable to determine whether appellant's unemployability is caused by his non-service-connected disabilities or by his service-connected disabilities ...[,] then the evidence may be so evenly balanced that the 'benefit of the doubt' doctrine found in 38 U.S.C. § 5107(b) (formerly § 3007) may apply." *Fluharty v. Derwinski,* 2 Vet.App. 409, 413 (1992).

■ In its May 1991 decision, the Board stated that in September 1990, VA had

received a copy of a letter reflecting that the veteran was receiving Social Security disability benefits (a copy of that letter does not appear in the record on appeal). *Ferazzoli*, BVA 91–___, at 7, 9. However, the record does not reflect that VA or the Board ever sought to obtain from the veteran or the Department of Health and Human Services (HHS) any records pertaining to the veteran's Social Security disability award. The Court has previously held that, although Social Security adjudications with regard to disability and unemployability are not controlling for purposes of VA adjudications, HHS decisions and records are "pertinent" to claims for VA benefits based in whole or in part on the same disability or disabilities. *See Murincsak v. Derwinski*, 2 Vet.App. 363, 370–72 (1992); *Masors*, 2 Vet.App. at 187–88; *Collier v. Derwinski*, 1 Vet.App. 413, 417 (1991). Therefore, where the Board is on notice of the existence of any such records, it must seek to obtain them. *See Masors, supra.* In the present case, the records pertaining to the veteran's Social Security benefits certainly may be pertinent to the determination of whether he is unemployable by reason of his service-connected disabilities. Therefore, the duty to assist in this case includes a duty to seek to obtain and, if obtained, consider all pertinent records from HHS concerning Social Security disability adjudications pertaining to the veteran. *See Murincsak, supra; Masors, supra; Collier, supra.*

### C. Prior Final Adjudications

In his brief, the appellant asserts that the Court has jurisdiction to review prior final decisions of the BVA in 1983 and a VARO in 1981. Br. at 15. However, the Court's jurisdiction is limited by statute to review of final BVA decisions on claims as to which a Notice of Disagreement (NOD) was filed on or after November 18, 1988. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat 4105, 4122 (1988). In *Russell v. Principi*, 3 Vet.App. 310, 314 (1992) (consolidated with *Collins v. Principi*, No 90–416) (en banc), the Court held that it may review BVA decisions (as to which a timely NOD and Notice of Ap-

peal have been filed) denying revision of prior final decisions (not subject to review in this Court directly) on the basis that such decisions contained "clear and unmistakable error" under 38 C.F.R. § 3.105(a) (1991). However, the Court may review a claim for revision of such prior final decisions only where a claim of "clear and unmistakable error" was properly raised to and decided by the BVA. *Russell*, 3 Vet. App. at 315. In his current claim, the veteran never raised to the Board a claim of clear and unmistakable error. Therefore, the Court does not have jurisdiction to review such a claim on appeal.

### D. Clear Error

In his brief, the appellant also requests that the Court reverse the Board's decision as "clearly erroneous" and award a total disability rating based on unemployability. However, in light of the inadequacy of the record, the Board's failure to make findings of fact regarding the credibility and probative value of numerous items of evidence, and its failure to make specific findings of fact as to whether the veteran is unemployable and, if so, whether his service-connected disabilities alone are sufficient to render him unemployable, remand for further development and readjudication is the appropriate remedy at this time. *See Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (not appropriate for court of review to make factual findings in the first instance). Similarly, because the inadequacies of the record and the Board's decision necessitate remand, the Court does not consider that oral argument would be helpful to its decision. Therefore, the Court will deny the appellant's motion for oral argument.

### III. CONCLUSION

Upon consideration of the record and the briefs of the parties, the Court summarily vacates the May 29, 1991, BVA decision and remands the record to the Board for prompt further development and readjudication, in accordance with this decision, on the basis of all evidence and material of record and applicable provisions of law and

regulation. *See* 38 U.S.C. § 7104(a), (d)(1); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). "On remand, the appellant will be free to submit additional evidence and argument". *Quarles v. Derwinski*, 3 Vet. App. 129, 141 (1992). The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after the filing of any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court. The Court denies the appellant's motion for oral argument.

VACATED AND REMANDED.

Before STEINBERG, Associate Judge.