Citation Nr: 1528175 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 11-29 861 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

Entitlement to service connection for a left knee disorder.


REPRESENTATION

Appellant represented by: Oklahoma Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Marcus J. Colicelli, Associate Counsel


INTRODUCTION

The Veteran served on active duty for training (ACDUTRA) from August 8, 1954, to August 22, 1954, from September 2, 1954, to October 30, 1954, from March 27, 1955, to July 23, 1955, from August 12, 1955, to August 28, 1955, on February 5, 1956, on April 8, 1956, from June 10, 1956, to June 24, 1956, from June 9, 1957, to June 23, 1957, from June 8, 1958, to June 22, 1958, from June 7, 1959, to June 21, 1959, from June 5, 1960, to June 19, 1960, and from June 11, 1961, to June 25, 1961. The Veteran also served on active duty from October 1961 to July 1981. 

The Veteran's claim comes before the Board of Veterans' Appeals (Board) on appeal from a June 2011 rating decision of the U.S. Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma, which denied the benefits sought on appeal. The Veteran then perfected a timely appeal of this issue.

In April 2013, the Veteran testified at a Travel Board hearing held at the local RO in Muskogee, Oklahoma, before the undersigned. A transcript of the hearing is currently of record.

In May 2014, the Board remanded this appeal to the RO via the Appeals Management Center (AMC), in Washington, DC, for further development. The appeal has now been returned to the Board for appellate disposition. 

This appeal was processed using the VBMS paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record, as well as his Virtual VA paperless claims file.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).




FINDING OF FACT

The Veteran's current left knee disorder is not shown to be causally or etiologically related to his active military service.


CONCLUSION OF LAW

Service connection for a left knee disorder is not established. 38 U.S.C.A. 
§§ 1110, 1131, 1154 (West 2014); 38 C.F.R. § 3.303 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran). 

I. Duties to Notify and Assist

Under applicable law, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100 , 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102 , 3.156(a), 3.159, 3.326(a) (2014).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record: (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and, (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the AOJ. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The Board finds that the content requirements of a duty-to-assist notice letter have been fully satisfied. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Letters from the RO dated in December 2010 and August 2011 provided the Veteran with an explanation of the type of evidence necessary to substantiate his claim, as well as an explanation of what evidence was to be provided by him and what evidence the VA would attempt to obtain on his behalf. The letters also provided the Veteran with information concerning the evaluation and effective date that could be assigned should service connection be granted, pursuant to Dingess v. Nicholson, 19 Vet. App. 473 (2006). The issue was last readjudicated in a March 2015 supplemental statement of the case. Accordingly, VA has no outstanding duty to inform the Veteran that any additional information or evidence is needed.

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records (STRs) and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

Here, the Board finds that all relevant facts have been properly developed, and that all evidence necessary for equitable resolution of the issue has been obtained. His STRs, personnel records, National Guard records, and post-service VA, Army, and private treatment records have been obtained. The claims file does not present evidence that the Veteran is currently receiving disability benefits from the Social Security Administration (SSA) for the disorder currently on appeal. Therefore, the Board does not need to make an attempt to obtain these records. The Board does not have notice of any additional relevant evidence that is available but has not been obtained. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on a claim, as defined by law. The record indicates that the Veteran participated in a VA examination in September 2013, the results of which have been included in the claims file for review. The examination involved a review of the claims file, a thorough examination of the Veteran, and an opinion that was supported by sufficient rationale. Therefore, the Board finds that the VA examination and medical opinion are adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim). Given the foregoing, the Board finds that the VA has substantially complied with the duty to obtain the requisite medical information necessary to make a decision on the Veteran's claim.

Furthermore, the Veteran was afforded a Board hearing in April 2013. A Board member has two duties at a hearing: (1) a duty to fully explain the issues still outstanding that are relevant and material to substantiating the claim; and, (2) a duty to suggest that a claimant submit evidence on an issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record. See 38 C.F.R. § 3.103(c)(2) (2013); Procopio v. Shinseki, 26 Vet. App. 76 (2012) (citing Bryant v. Shinseki, 23 Vet. App. 488, 492, 496 (2010)).

Here, during the hearing, the VLJ specifically noted the issue as entitlement to service connection for a left knee disorder. See Board hearing transcript, page 2. The Veteran was assisted at the hearing by an accredited representative from the Oklahoma Department of Veterans Affairs. Id. The VLJ noted the purpose of the hearing ("why you feel you're entitled to service connection"). Id. The VLJ also stated the element of the claim that was lacking to substantiate the claim for benefits ("nexus, i.e., a relationship has been shown between your disabilit[y] and service. And I understand you served on several periods of active duty training as well. But in any event what we need to do is show that your claimed disabilit[y] ha[s] some sort of connection to your period of active duty training or service."). Id. at 3. The representative and the VLJ then asked questions to ascertain whether the Veteran had submitted evidence in support of this claim. Id. at 9-21. In addition, the VLJ and the representative sought to identify any pertinent evidence not currently associated with the claims folder that might have been overlooked or was outstanding that might substantiate the claim. Id. Moreover, neither the Veteran nor his representative has asserted that VA failed to comply with the hearing requirements, nor identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the element necessary to substantiate the claim, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the element necessary to substantiate his claim for benefits. As such, the Board finds that the VLJ complied with the aforementioned hearing duties, and that any error in notice provided during the Veteran's hearing constitutes harmless error.

The Board is also satisfied as to substantial compliance with its May 2014 remand directives. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). In May 2014, the Board remanded this claim, in pertinent part, for the AOJ to request the Veteran's Army Active Duty Inpatient Clinical Records from the National Personnel Records Center (NPRC). In compliance with the remand instructions, an investigation was conducted by the NPRC for in-patient clinical records of the Post Hospital at Fort Jackson, South Carolina for the year 1954. See March 2015 request for information. Thereafter, the NPRC informed the Appeals Management Center (AMC) that no records pertaining to the Veteran could be located. Id. The Veteran was advised of this result via March 2015 correspondence. See March 2015 important final attempt. The March 2015 correspondence conforms to the statutory requirements of 38 C.F.R. 3.159(e), noting in detail the efforts made by the VA between May 2014 and March 2015 to obtain the records. Id. The remand also included readjudicating the claim, which was accomplished in the March 2015 Supplemental Statement of the Case (SSOC). Thus, the Board finds that there has been substantial compliance with its remand directives. Id. 

For the foregoing reasons, the Board concludes that all reasonable efforts were made by the VA to obtain evidence necessary to substantiate the Veteran's claim. Therefore, no further assistance to the Veteran with the development of evidence is required.

II. Service Connection

The Veteran seeks service connection for a left knee disorder.

Service connection may be granted for a disorder resulting from a disease or injury incurred in or aggravated by active duty or ACDUTRA, or for a disorder resulting from an injury incurred during a period of inactive duty training (INACDUTRA). 38 U.S.C.A. §§ 101(24), 1100, 1110, 1131 (West 2014). ACDUTRA includes full-time duty performed for training purposes by members of the Reserves. INACDUTRA includes duty required approximately two days a month.

To establish direct service connection, the record must contain: (1) evidence of a current disorder; (2) evidence of in-service incurrence or aggravation of an injury or disease; and, (3) evidence of a nexus between the current disorder and the in-service disease or injury. In other words, entitlement to service connection for a particular disorder requires evidence of the existence of a current disorder and evidence that the disorder resulted from a disease or injury incurred in or aggravated during service. 38 U.S.C.A. §§ 1110, 1131.

Service connection may also be granted for any disease diagnosed after the military discharge, when all the evidence, including that pertinent to the period of military service, establishes that the disease was incurred during the active military service. 38 U.S.C.A. § 1113(b) (West 2014); 38 C.F.R. § 3.303(d). 

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C.A. § 7104(a) (West 2014); Baldwin v. West, 13 Vet. App. 1 (1999); see 38 C.F.R. § 3.303(a). 

When there is an approximate balance of positive and negative evidence regarding a material issue, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); see 38 C.F.R. §§ 3.102. If the Board determines that the preponderance of the evidence is against the claim, it has necessarily found that the evidence is not in approximate balance, and the benefit of the doubt rule is not applicable. Ortiz, 274 F.3d at 1365. 

As noted above, the first element of service connection requires evidence of a current disorder. Here, a current diagnosis has been established. On VA examination in September 2013, the Veteran was diagnosed with degenerative joint disorder (DJD) of the left knee. See September 2013 VA examination. Thus, the Veteran has satisfied the first element of service connection.

As stated above, the second element of service connection requires evidence of in-service incurrence or aggravation of an injury or disease. Here, the Veteran contends that he injured his left knee while attending a field wireman's course in 1954, while on ACDUTRA at Fort Jackson, South Carolina. See Board hearing transcript, page 5. Specifically, the Veteran recalls that he hurt his knee after impact with the ground from pole sliding, but was treated for an ankle injury in the hospital. Id. at 17. The Veteran's STRs are silent for documentation of a left knee disorder or injury, including his July 1957, 1964, and 1976 re-enlistment examinations. See July 1957 report of medical history; July 1964 report of medical history; February 1976 report of medical examination. As discussed above, attempts were made to secure hospitalization records pertaining to the alleged 1954 incident, but a diligent investigation by the NPRC unfortunately bore no fruit. See March 2013 important final attempt. The records reveal no complaints or treatment related to the Veteran's knee disorder, but for the Veteran's January 1981 retirement examination where the Veteran indicated that he had a "trick or locked knee" and noted a "1954 Ft Jackson, SC left ankle" injury. See January 1981 report of medical history. 

The first post-service relevant complaint related to the left knee is in a May 2005 private treatment record. See May 2005 general orthopaedic record. During this outpatient treatment visit, the Veteran complained of chronic left knee pain for "about 15 years." Id. He did not indicate that his left knee disorder had been present since his active military service. Id. The Veteran's active duty ended in July 1981. See DD214. The Board finds the Veteran's allegation of injury unclear. He currently contends that he hurt his knee in service but he was only treated for an ankle injury in service. His January 1981 service retirement examination report shows he checked the box for indicating a history of "trick or locked knee" but elaborated that he injured his ankle. In 2005, prior to the filing of the instant claim, during the course of medical treatment, the Veteran reported the onset of left knee pain "for about [the past] 15 years." Also, as detailed below, when asked by the 2013 VA examiner when his left knee pain began, the Veteran could not recall the date of onset and was once again diverted to talking about having sustained an ankle injury in service. The foregoing is not persuasive evidence of an in-service injury to the left knee, and not persuasive evidence of left knee problems ever since service. For these reasons, the Board finds that there is no credible lay evidence that the Veteran sustained a left knee injury in service from which he has had left knee problems ever since. See Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995), aff'd per curiam, 78 F.3d. 604 (Fed. Cir. 1996); see also Macarubbo v. Gober, 10 Vet. App. 388 (1997) (holding that the credibility of lay evidence can be affected and even impeached by inconsistent statements, internal inconsistency of statements, inconsistency with other evidence of record, facial implausibility, bad character, interest, bias, self-interest, malingering, desire for monetary gain, and witness demeanor).

As previously mentioned, the third element of service connection requires evidence of a nexus between the current disorder and the in-service disease or injury. 

Here, regarding an indication that the claimed disorder is related to service, the Veteran submitted a February 2011 medical opinion from Dr. J.P., an Army physician, in which he answered in the affirmative that he reviewed the Veteran's STRs. See February 2011 consultation note. Dr. J.P. opined that the Veteran's gonarthrosis, the reason for the Veteran's total knee replacement, started during service. Id. Dr. J.P., however, provided no rationale for this opinion. Id. 

The Veteran also submitted a September 2011 medical opinion from a VA physician, Dr. J.A., in which he opined that it was as likely as not that the Veteran's left knee problem began as an injury sustained while the Veteran was on active duty. See September 2011 VA form 21-4138. Dr. J.A., however, similarly provided no rationale for this opinion. Id. 

Neither a VA medical examination report nor a private medical opinion is entitled to any weight in a service-connection or rating context if it contains only data and conclusions. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (citing Stefl v. Nicholson, 21 Vet. App. 120, 125 (2007) (holding that "a mere conclusion by a medical doctor is insufficient to allow the Board to make an informed decision as to what weight to assign to a doctor's opinion"); Miller v. West, 11 Vet. App. 345, 348 (1998) ("A bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record."); see also Dennis v. Nicholson, 21 Vet. App. 18, 22 (2007) ("The Court has long held that merely listing evidence before stating a conclusion does not constitute an adequate statement of reasons and bases." (citing Abernathy v. Principi, 3 Vet. App. 461, 465 (1992))). 

The Veteran was afforded a VA examination in September 2013. See September 2013 VA examination. Following a physical examination of the Veteran and a review of the claims file, the VA examiner determined that the Veteran's current left knee disorder is less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. Id. The examiner reasoned that the STRs were reviewed and do not document any history of complaints, evaluation, or treatment of a left knee disorder. Id. There is no history recorded to indicate that a left knee injury occurred, nor does the re-enlistment physical of 1976 note of any left knee problems. Id. The examiner did note that the exit physical of 1981 indicated that the Veteran complained of an injury to his left ankle, but did not contain any complaints or treatment of a left knee condition. Id. The examiner also indicated that upon interview of the Veteran, he did not remember when his left knee pain began, but actually indicated that he had pain in his left ankle following the 1954 incident. Id. Therefore, the examiner found that there is an absence of a link or nexus between the Veteran's current left knee disorder and any type of knee injury in service. Id. The examiner stated that the opinions of Drs. J.A. and J.P. were considered in the development of this opinion; however, they do not change the examiner's opinion. Id. The doctors developed an opinion based upon the Veteran's history alone, involving an incident that happened 57 years prior, and therefore is subject to distortion due to years lapsed. Id.

The Board finds the negative evidence outweighs the positive evidence. It is to be noted that the Board is not free to substitute its own judgment for as such a medical expert. See Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991). However, the Board is required to assess the credibility and weight to be given to the evidence. See Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997). As the VA examiner provided a detailed explanation as to why the Veteran's left knee disorder is not consistent with the type of injury he alleges that he sustained during his active military service, the Board finds the probative value of the VA examination report is greater than the cursory conclusions of the Veteran's treating physicians. The Board is not persuaded by the treating physicians' opinions because they do not indicate that they were based on a review of actual evidence in the claims folder (STRs are negative). While the Veteran may be competent to report his history of symptoms, it appears that regarding these medical opinions, the Veteran's history was not accurately reflected. As noted above, there is no medical evidence or credible lay evidence of an in-service injury to the left knee. Moreover, as described above, the treating physicians did not provide any rationale for their opinions. As such, the Board finds the treating physicians' statements to be of low probative value.

In contrast, the VA examiner, who conducted the September 2013 VA examination and authored the accompanying report, accurately and thoroughly characterized the evidence of record and conducted a comprehensive examination of the Veteran's left knee. The VA examiner's report of the Veteran's medical history and his clinical findings are consistent with the entire body of medical evidence of record. There is no basis on which to find that the VA report is incomplete or insufficient in any way. Thus, the Board finds that the VA examiner's opinion is dispositive on the nexus issue presented in this case. The probative medical opinion evidence shows that there is no nexus between the Veteran's current left knee disability and an incident of his military service. 
In reaching this decision, the Board has considered the Veteran's arguments in support of his claim. The Board acknowledges that the Veteran is competent, even as a layperson, to attest to factual matters of which he has first-hand knowledge, e.g., an injury during his active military service. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that lay evidence is one type of evidence that must be considered, and that competent lay evidence can be sufficient in and of itself. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006). In Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009), and in Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007), the Federal Circuit determined that lay evidence can be competent and sufficient to establish a diagnosis of a disorder when: (1) a layperson is competent to identify the medical disorder (noting that sometimes the layperson will be competent to identify the disorder where the disorder is simple, for example a broken leg, and sometimes not, for example, a form of cancer); (2) the layperson is reporting a contemporaneous medical diagnosis; or, (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. The relevance of lay evidence is not limited to the third situation, but extends to the first two as well. Whether lay evidence is competent and sufficient in a particular case is a fact issue. Id. 

Although the Veteran is competent to report that he injured his left knee during his active military service, which resulted in his current left knee disorder, the Board must still weigh his lay statements against the evidence of record. See Layno v. Brown, 6 Vet. App. 465 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")). In making this credibility determination, for reasons set forth above, there is no credible lay evidence that the Veteran sustained a left knee injury in service from which he has had left knee problems ever since. Thus, there is no credible lay evidence of continuity of symptomatology. 

The Board notes that under the provisions of 38 U.S.C.A. § 5107(b), the benefit of the doubt is to be resolved in the claimant's favor in cases where there is an approximate balance of positive and negative evidence in regard to a material issue. The preponderance of the evidence, however, is against the Veteran's claim, and thus that doctrine is not applicable. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The Veteran's claim of entitlement to service connection for a left knee disorder is not warranted.


ORDER

Entitlement to service connection for a left knee disorder is denied.



____________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs