Eugene T. EWING, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 91–305.

United States Court of Veterans Appeals.

May 21, 1992.

Before KRAMER, Associate Judge.

## MEMORANDUM DECISION

KRAMER, Associate Judge:

Appellant appeals an October 22, 1990, decision of the Board of Veterans' Appeals (BVA) granting him an increased evaluation for posttraumatic stress disorder (PTSD). Because the BVA failed to address adequately relevant evidence and correctly consider and apply relevant law and regulations, the Court vacates and remands the case to the BVA for proceedings consistent with this decision.

## I.

### *Factual Background*

In its decision, the BVA increased appellant's service-connected PTSD disability, previously rated at 30%, to 50%. *Eugene T. Ewing*, BVA 90-——, at 4–5 (Oct. 22, 1990). Appellant contends that he is entitled to a higher rating. For purposes of this decision, the relevant evidence of record involves three reports, two prepared by physicians and the other prepared by a psychologist.

On March 10, 1987, Dr. Maurice S. Cerul, a private physician, who had examined appellant, stated in relevant part:

The following conditions are all present:

1. Severe and constant depression
2. Recurring dreams and nightmares
3. Alienation from spouse, friends, relatives, and people in general
4. Suicidal tendencies
5. Loss of ambition and self-confidence
6. Chronic unemployment
7. Isolation in the community
8. Extreme nervousness and anxiety
9. [F]requent and debilitating headaches
10. Feeling of hatred, distrust, and resentment towards others

11. Constant stress

12. [L]oss of self-control

In addition Mr. Ewing exhibits disturbed thought and behavior patterns, and at times loses touch with reality. Due to his extremely [illegible] relationships with people he is in a state of constant conflict.

As a result of the symptoms caused by PTSD[,] Mr. Ewing has suffered total social and industrial impairment, and I feel that this condition is a permanent one. I feel that Mr. Ewing's degree of incapacitation in regard to employment and his personal life is very nearly one hundred percent.

R. at 39. It is unclear from Dr. Cerul's letter whether or not he is a psychiatrist. *Id.*

On June 13, 1989, Department of Veterans Affairs (VA) doctors Jeffrey Peters, Chief of Psychiatry Service, and Patricia Jarrett, resident psychiatrist, examined appellant, noted he was on psychotropic medication, and concluded, after describing his symptomatology, that appellant's PTSD was "chronic, moderate to severe." R. at 33–35. In regard to appellant's employability, Doctors Peters and Jarrett reported in relevant part:

There has been significant impairment in his ability to function occupationally.... It would also be suggested that he have some vocational assessment with possible rehabilitation and efforts ... be made to assist him in finding job which would be more consistent and tolerate [sic] of his psychiatric symptomatology and disability.

*Id.*

On February 7, 1990, appellant was examined by Dr. Michael Moran, a private licensed psychologist. After setting forth and assessing appellant's background, symptomatology, intellectual ability, and present personality traits in a four-page report, Dr. Moran· gave a guarded prognosis for appellant's PTSD and stated that "Eugene has become almost completely dysfunctional as a result of his posttraumatic stress disorder." R. at 53–56.

After purportedly reviewing all these reports, the BVA determined in one paragraph:

The evidence of record indicates that the [appellant] receives private psychiatric treatment and takes psychotropic medication for his [PTSD]. We note that the [appellant] has a history of a progressive decline in his level of occupational functioning, descending from working as a buyer to a position as a laborer, and he is presently unemployed. The evidence further indicates that while the [appellant] lives with his wife, his other social relationships are quite limited. At a recent clinical evaluation the veteran reported increasing depression and he was observed to be quite frustrated. Following the recent psychiatric evaluation, VA medical personnel expressed the opinion that [appellant]'s [PTSD] was moderate to severe. *After reviewing the pertinent evidence of record, including both VA and private documents, we are satisfied that considerable impairment of social and industrial adaptability is demonstrated....*

*Ewing*, BVA 90-——, at 4 (emphasis added). Appellant filed his appeal with the Court.

## II.

### Analysis

■ When the BVA concluded that appellant's degree of impairment was no more than "considerable" under 38 C.R.F. § 4.132, Diagnostic Code (DC) 9411 (1991), it did so without adequate analysis. *See e.g., Cousino v. Derwinski*, 1 Vet.App. 536 (1991); *Webster v. Derwinski*, 1 Vet.App. 155, 158–59 (1991). It failed to explain how Doctors Peters and Jarrett's opinion (that appellant's impairment ranged from moderate to severe) translates into "considerable impairment" under DC 9411. This defect is especially significant in light of 38 C.F.R. § 4.7 (1991) which requires that, when there is an uncertainty over which of two evaluations to apply, the higher of the two evaluations "will be assigned if the disability picture more nearly approximates the criteria required for that rating." Further-

more, the BVA neither addressed Dr. Moran's February 1990 opinion that appellant is almost completely dysfunctional because of PTSD, nor Dr. Cerul's March 1987 opinion that appellant has a total, permanent social and industrial impairment and his incapacity for employment is almost 100%. The BVA must address all relevant medical evidence. *Cousino,* at 539–40. Should the BVA, in reconciling evidence, wish to discredit the weight or credibility of evidence, it must provide adequate reasons therefor. *Sanden v. Derwinski,* 2 Vet.App. 97, 100–01 (1992); *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991); *Willis v. Derwinski,* 1 Vet.App. 63, 66 (1991). In evaluating the evidence, the BVA is to consider and apply 38 C.F.R. §§ 4.7, 4.3, 3.102 (1991).

 The Court notes that appellant, in his brief, requests a specific retroactive effective date:

> The BVA failed to stipulate that the rating increase granted on 10/22/90 should be made retroactive to the original claim date. All previous rating increases were made retroactive to 9/1/84 but for no apparent reason this increase was made effective 7/1/89.

Appellant's Br. at 1. It is unclear whether the BVA dealt with this issue. It simply stated, in its order, that "an evaluation of 50 percent for [PTSD] is granted, subject to controlling regulations applicable to the payment of monetary benefits." *Ewing,* at 5. Certainly, there is no legal error in this directive. Moreover, a review of the record prior to the BVA decision gives no indication that the issue of effective date was in dispute. The Court thus concludes that the effective date, of which appellant complains in his brief, was assigned or adjudicated subsequent to the BVA decision. Because this issue was not raised before the BVA, it may not be considered by the Court. *Clark v. Derwinski,* 2 Vet.App. 166 (1992); *Branham v. Derwinski,* 1 Vet. App. 93 (1991). The Court may only review final decisions of the BVA. 38 U.S.C. § 7252(a) (formerly § 4052(a)). *Cf. Rosler v. Derwinski,* 1 Vet.App. 241, 249 (1991). Where an appellant has not first exhausted his administrative remedies, the Court may not preempt the BVA and hear the merits of a claim. *Mokal v. Derwinski,* 1 Vet. App. 12, 15 (1990).

### III.

### *Conclusion*

Because the outcome of the case is not reasonably debatable, summary disposition is appropriate. *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). Therefore, the motion of the Secretary of Veterans Affairs for summary affirmance is denied and the decision of the BVA is vacated and remanded for proceedings consistent with this decision.