Jose M. ROMERO, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–1467.

United States Court of Veterans Appeals.

April 6, 1993.

Before STEINBERG, Associate Judge▮

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

■ The appellant, World War II veteran Jose M. Romero, appeals from a May 28, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying an increased rating for service-connected post-traumatic stress disorder (PTSD). *Jose M. Romero*, BVA 91–30559 (May 28, 1991). Summary disposition is appropriate here because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). For the reasons set forth below, the Court will remand the matter to the Board for prompt readjudication of the appellant's claim in accordance with this decision.

## I. Background

The veteran served in the New Mexico National Guard from November 1940 to February 1946. R. at 2, 15, 108. He was held by the Japanese as a prisoner of war (POW) from April 1942 to September 1945. R. at 68. The report of his separation examination was negative for a psychiatric disorder. R. at 15. Likewise, the reports from November 1950 and December 1970 neuropsychiatric examinations by the Veterans' Administration (now Department of Veterans Affairs) (VA) were negative for a psychiatric disorder. R. at 23, 39. In May 1981, a private psychiatrist who had examined the veteran diagnosed him as suffering from "post-traumatic stress syndrome". R. at 60. Also in May 1981, a VA examiner diagnosed him with "chronic anxiety reaction secondary to experiences as a POW" that resulted in a "mild" degree of impairment. R. at 65. In November 1981, a VA psychiatrist concluded that the veteran was suffering from PTSD of "a significant severity" indicative of a need for supportive psychotherapy. R. at 71.

In a December 1970 rating decision, a VA regional office (RO) denied the veteran's claim for service-connected anxiety disorder. R. at 68. The veteran reopened his claim in April 1981, and the RO denied his claim in August 1981 based on the then existing rating criteria. *Ibid.* However, in October 1981, pursuant to the then newly enacted Pub.L. No. 97–37, 95 Stat. 935 (1980), which presumed service connection for "any of the anxiety states" in an ex-POW of 30 or more days captivity, *see* 38 U.S.C.A. § 1152(b) (West 1991), the VARO granted the veteran a 10% disability rating for chronic anxiety reaction. *Ibid.* In May 1982, the BVA denied the veteran's claim for an increased disability rating for service-connected chronic anxiety reaction. R. at 72. In June 1990, the VARO reclassified as PTSD the veteran's chronic anxiety reaction, but once again denied his claim for a disability rating in excess of 10%. R. at 152–53. He then appealed that rating decision to the BVA which issued the adverse May 28, 1991, decision here on appeal.

## II. Analysis

Because the appellant is seeking an increased rating for his service-connected PTSD, the Court notes that that claim is a new claim not subject to the provisions of 38 U.S.C.A. §§ 7104(b) and 5108 (West 1991) that prohibit reopening of previously disallowed claims except upon new and material evidence. *See Proscelle v. Derwinski,* 2 Vet. App. 629, 631–32 (1992). Under 38 U.S.C.A. § 7104(d)(1) and the Court's precedents beginning with *Gilbert v. Derwinski,* 1 Vet.App. 49, 56 (1990), a claimant is entitled to a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions." 38 U.S.C.A. § 7104(d)(1) (West 1991). The reasons or bases must include an "analysis of the credibility or probative value of the evidence submitted by or on behalf of the [claimant] . . . [and] a statement of the reasons or bases for . . . rejection of this evidence by the Board." *Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 217 (1991); *see also Hatlestad v. Derwinski,* 1 Vet.App. 164, 169 (1991). Moreover, the Board may not rely on its own unsubstantiated medical conclusions to reject expert medical evidence in the record; rather, the Board may reject a claimant's medical evidence only on the basis of independent medical evidence. *See Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991); *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992). Where the Board relies upon the medical evidence of record, it must thoroughly address, analyze, and reconcile all of the evidence. *Cousino v. Derwinski,* 1 Vet.App. 536, 539 (1991). The degree of specificity required of the Board's reasons or bases is particularly great when, as here, the Board's conclusions are of a "scientific or medical nature". *Sammarco v. Derwinski,* 1 Vet.App. 111, 112 (1991); *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Generally, the reasons or bases must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C.A. § 7104(d)(1) (West 1991); *Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992); *Gilbert,* 1 Vet.App. at 57.

■ The 10% disability rating for the veteran's service-connected PTSD was issued pursuant to the criteria in 38 C.F.R. § 4.132, Diagnostic Code (DC) 9411 (1992): "Less than the criteria for the 30 percent, with emotional tension or other evidence of anxiety productive of mild social and industrial impairment". The DC criteria for a 30% rating are: "Definite impairment in the ability to establish or maintain effective and wholesome relationships with people. The psychoneurotic symptoms result in such reduction of initiative, flexibility, efficiency and reliability levels as to produce definite industrial impairment".

In denying the appellant an increased rating for service-connected PTSD, the Board stated:

> [A] private physician reported that the veteran's [PTSD] "markedly interferes with his ability to participate in and enjoy many of the fundamental common pleasures of life." This physician noted that the veteran's memories of his [POW] experiences "are as fresh today as if they had recently occurred"; the veteran's prognosis was "guarded." The report of an April 1990 VA psychiatric examination indicates diagnoses to include [PTSD], with severe symptomatology, and psycho-social stressors considered as catastrophic from World War II experiences.... The April 1990 VA psychiatric examination report does not show the presence of objective findings that would be productive of more than mild industrial impairment. Although the veteran's mood was "basically" anxious, his affective responses were appropriate. His speech was slightly pressured, but he was coherent, relevant and logical. The report notes that there was no blocking, circumstantiality or tangentiality [sic]. The veteran indicated that he experienced episodes of disassociation or flashbacks during which he talked to his buddies; however, he denied current feelings of depression, suicidal ideations or homicidal thoughts, and he was oriented in three spheres.

*Romero,* BVA 91–30559, at 5. In its decision, the Board failed thoroughly to address, analyze, and reconcile all of the objective medical evidence of record. *See Colvin, supra; Cousino, supra.* Specifically, it omitted a discussion of the findings reached by the veteran's private psychiatrist who concluded in February 1986:

> [B]ecause of his chronic [PTSD], [the veteran] has definite impairment in his ability to establish or maintain effective and wholesome relationships with people. This impairment extends to members of his family. There is considerable impairment in his ability to socialize with others. In general, he has maintained a somewhat inflexible and isolative stance.

R. at 109. It also failed to address the following findings in the report of the April 1990 VA psychiatric examination:

> [T]he veteran described severe preoccupation with the suffering he saw in the Philippines, intrusive thoughts, flashbacks of his POW experiences, nightmares usually also of his traumatic experiences as a [POW], and usually confusion when he wakes in the morning. He also described preoccupation with death of his buddies, sleep difficulties, depressive episodes ... and at times severe anger with the feeling of hurting somebody. He also described ... survival guilt, hypervigilance and increased startle reflex.

R. at 139. Accordingly, the Court will remand the Board's decision for readjudication of the appellant's claim.

On remand, if the Board determines that "the [examination] report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1992); *see Green v. Derwinski,* 1 Vet. App. 121, 124 (1991). The Court notes that the Board, in determining the adequacy of the psychiatric examinations of record, must recognize and address the fact that the veteran's cultural background may have made it difficult for him to express fully his feelings to others. As noted by his private psychiatrist in a February 1986 psychiatric report:

> Although [the veteran] is able to talk with me fairly freely about his prison camp experiences, he has had difficulty relating both the difficulties of his prison camp experience and his subsequent post-trau-

matic difficulties to others. His difficulty in relating his problems to others is partially cultural.... On a cultural basis, it is extremely difficult for him to talk about personal matters to anyone else. It has taken several years of regularly scheduled interviews ... to develop a sense of trust and to overcome the cultural barriers in order to talk more freely about his experiences.

R. at 108.

### III.  Conclusion

Upon consideration of the record and the submissions of the parties, the Court summarily vacates the Board's May 28, 1991, decision and remands the matter to the Board for prompt compliance with the duty to assist and prompt readjudication, consistent with this decision. "On remand, the appellant will be free to present additional evidence and argument". *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). The Court expects that the Board on remand will reexamine the evidence of record, seek appropriate additional evidence, and issue a new decision supported by an adequate statement of reasons or bases. The Court notes that "a remand is meant to entail a critical examination of the justification for the decision" and is not "merely for the purpose of rewriting the [decision] so that it will superficially comply with" the Court's decision. *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991); *see* 38 U.S.C.A. §§ 5107(a); 7104(a), (d)(1) (West 1991). A final decision by the Board following remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new BVA decision is mailed to the appellant.

VACATED AND REMANDED.