**Joseph C. GENOUS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1433.**

United States Court of Veterans Appeals.

May 12, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Vietnam era veteran Joseph C. Genous, appeals from a May 1, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to non-service-connected (NSC) pension based on permanent and total disability. In addition to challenging the denial of NSC pension, the veteran asserts that the Board erred in failing to adjudicate a claim for service connection for a psychiatric condition. The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. The appellant has filed a motion for an order directing the Secretary to supplement the record with a copy of a 1988 letter to the appellant from the Veterans' Administration (now Department of Veterans Affairs) (VA) which the appellant asserts informed him that he had been awarded service connection for a disability (appellant does not specify which disability).

Summary disposition is appropriate in this case because it is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). The Court, finding numerous errors in connection with the BVA adjudication, will deny the motions of the Secretary and the appellant, vacate the May 1991 BVA decision, and remand the matter to the Board for further proceedings consistent with this decision.

### I. Background

The veteran served on active duty from January 1972 to March 1974. R. at 61. His claim for NSC pension was previously denied by the BVA in September 1986. Supp.R. at 36. The veteran had many hospitalizations at VA facilities between 1986 and 1990 for numerous conditions, which have been the subject of various, apparently conflicting, diagnoses. On hospitalization reports in February 1986 and October 1987, Dr. O. Koluvek, a VA physician, diagnosed the veteran's problem as "alcohol dependence" and described the veteran as

being in "fair condition". R. at 33, 37. In six hospitalization reports between June and September 1988, Dr. P. Bhatt, a VA physician, listed a primary diagnosis of "major depression", as well as diagnoses of "passive dependent personality" and "alcohol dependence" (the latter was listed on one report as a "secondary diagnosis", R. at 42). R. at 35, 38–43. In an August 27, 1988, hospitalization report, Dr. Bhatt stated: "The patient has had numerous psychosocial stresses, and he has not been able to handle living outside [the VA hospital]." R. at 42.

In a July 1, 1988, hospitalization report, Dr. E. Haddad, a VA physician, diagnosed the veteran with "alcohol dependence" and "questionable depression". R. at 39. In a December 18, 1989, hospitalization report, a VA physician (whose name is illegible on the report) diagnosed the veteran with "dysthymic disorder" and "atypical psychosis". Supp.R. at 1. In an April 1990 hospitalization report, Dr. K. Kim, a VA physician, diagnosed the veteran with "induced psychotic disorder" and "alcohol and drug abuse". R. at 53. Dr. Kim concluded that the veteran "may be employable for a simple and repetitive job." R. at 55.

According to an August 14, 1990, VA regional office (RO) decision, the veteran on March 9, 1990, filed with the RO a claim for VA benefits. R. at 56. However, a copy of the application for such benefits does not appear in the record before this Court. In June 1990, the veteran filed with the RO an "IMPROVED PENSION ELIGIBILITY VERIFICATION REPORT", on which he indicated that he was receiving monthly payments of Supplemental Security Income (SSI) or other public assistance. R. at 51. In its August 1990 decision, the RO denied entitlement to NSC pension and concluded that the veteran had a combined 40% NSC disability rating due to the following NSC disabilities, with the following individual disability ratings: "depression with history of anxiety neurosis and passive dependent personality disorder", 30%; sinus tachycardia, 10%; syncope, 10%; fracture, left ankle, 0%; and hypertension, 0%. R. at 57. In October 1990, the veter-

an filed with the RO a Notice of Disagreement, expressing his disagreement "with the decision you made on my [NSC] claim". R. at 59. .

In its May 1991 decision denying NSC pension, the Board noted the various diagnoses made during the VA hospitalizations between 1986 and 1990, and concluded:

> Chronic alcohol or drug abuse is generally considered willful misconduct and nothing appears in the current record to show that such abuse in this case is due to factors other than willful misconduct. Therefore, alcohol and drug abuse is not considered a disability in determining whether or not the veteran is capable of employment.

> Furthermore, the veteran is under age 40 and is held to a higher standard to prove permanent and total disability for pension purposes. Regulatory requirements stipulate that a veteran under age 40 must be precluded from more than marginal employment, even after treatment and rehabilitation, in order to be awarded pension benefits. The evidence does not show that the end result of proper adherence to a treatment regimen for his induced psychotic disorder, and alcohol and drug abuse would nonetheless result in the inability to engage in a substantially gainful occupation. There is no evidence that sinus tachycardia or syncope is productive of impairment which impedes employability. The VA treatment team found the veteran to be employable for simple and repetitive jobs. It is reasonable to conclude that, with abstention from alcohol and drug abuse, the veteran is capable of functioning in a substantially gainful occupation.

*Joseph C. Genous*, BVA 91–14132, at 4–5 (May 1, 1991).

## II. Analysis

### A. NSC Pension

■ *1. Governing law and regulation:* VA is required to pay NSC disability pension to a veteran of a period of war "who is permanently and totally disabled from [NSC] disability not the result of the veter-an's willful misconduct". 38 U.S.C.A. § 1521(a) (West 1991); *see also* 38 U.S.C.A. § 1502(a) (West 1991) (circumstances under which a veteran will be presumed permanently and totally disabled); *Talley v. Derwinski*, 2 Vet.App. 282, 287 (1992). A repeat claim for NSC pension filed after the final denial of a previous claim for NSC pension is not a claim for reopening subject to the requirement in 38 U.S.C.A. § 5108 (West 1991) that "new and material evidence" must be presented before the claim may be adjudicated. *See Abernathy v. Principi*, 3 Vet.App. 461, 464 (1992).

In 38 C.F.R. § 4.15 (1992), VA has established criteria for determining when permanent total disability exists:

> Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation[:] *Provided,* that permanent total disability shall be taken to exist when the impairment is reasonably certain to continue throughout the life of the disabled person.

(Emphasis in original.) Furthermore, 38 C.F.R. § 4.17 (1992) provides:

> All veterans who are basically eligible and who are unable to secure and follow a substantially gainful occupation by reason of disabilities which are likely to be permanent shall be rated as permanently and totally disabled. For the purpose of pension, the permanence of the percentage requirements of § 4.16 is a requisite....

> . . . .

> (b) Claims of all veterans who fail to meet the percentage standards but who meet the basic entitlement criteria and are unemployable, will be referred by the rating board to the Adjudication Officer under § 3.321(b)(2) of this chapter.

The "percentage requirements of § 4.16" establish (in paragraph (a) thereof) that the RO rating board may award a total disability rating based on unemployability when the veteran suffers from one disability rated at least 60% disabling, or from two or more disabilities when one is at least 40%

disabling and there is sufficient additional disability to bring the combined rating to 70% or more, and the veteran is unemployable. 38 C.F.R. § 4.16(a) (1992). Under 38 C.F.R. § 3.321(b)(2) (1992), the VA Adjudication Officer is authorized to award NSC pension on an "extra-schedular basis" when the claimant "fails to meet the disability requirements based on the percentage standards of the rating schedule but is found to be unemployable by reason of his or her disability(ies), age, occupational background and other related factors".

Where it is determined that the veteran suffers from a disability due to his or her own willful misconduct, 38 C.F.R. § 4.17a (1992) provides:

A permanent and total disability rating under the provisions of §§ 4.15, 4.16[,] and 4.17 will not be precluded by reason of the coexistence of misconduct disability when:

(a) A veteran, regardless of employment status, also has innocently acquired 100 percent disability, or

(b) Where unemployable, the veteran has other disabilities innocently acquired which meet the percentage requirements of §§ 4.16 and 4.17 and would render, in the judgment of the rating agency, the average person unable to secure or follow a substantially gainful occupation.

Finally, where, as here, the veteran is under 40 years of age, 38 C.F.R. § 3.342(b)(3) (1992) establishes the following additional requirement:

(3) Special consideration must be given the question of permanence in the case of veterans under 40 years of age. For such veterans, permanence of total disability requires a finding that the end result of treatment and adjustment to residual handicaps (rehabilitation) will be permanent disability of the required degree precluding more than marginal employment.

*Cf.* 38 C.F.R. § 4.16(a) (1992) ("marginal employment [for purposes of determining total disability for service-connected conditions] generally shall be deemed to exist when a veteran's earned annual income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person", and "may also be held to exist, on a facts found basis ..., when earned income exceeds the poverty threshold"); *Wilson (Melvin) v. Brown,* 5 Vet. App. 11, 13 (1992) (mem. dec.) (on pension claim, BVA erred in failing to discuss whether "marginal employment" for pension purposes differed from "marginal employment" as defined for compensation purposes in § 4.16(a)).

■ *2. Reasons or bases:* Pursuant to 38 U.S.C.A. § 7104(d)(1) (West 1991), the Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact or law. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). The statement must be sufficient to enable the appellant and this Court to understand the "precise basis" for the Board's conclusions, must "account for the evidence [the Board] finds persuasive or unpersuasive", and must include "an analysis of the credibility or probative value of the evidence submitted by and on behalf of the veteran". *Id.* at 56, 59. In the present case, the Board's reasons or bases are deficient in several respects.

■ First, the Board based its decision in part upon a mischaracterization of the medical evidence of record. The Board stated, incorrectly, that "[t]he VA treatment team found the veteran to be employable for simple repetitive jobs". *Genous,* BVA 91–14132, at 4. However, the VA physician's opinion to which the Board was apparently referring stated only that "[he] *may* be employable for a simple and repetitive job." R. at 55 (emphasis added). Because this mischaracterization may affect the weight attributed to that evidence, the Board's error may be prejudicial to the veteran. *See Sheed v. Derwinski,* 2 Vet.App. 255, 260 (1992) (where BVA had exaggerated evidence of veteran's education level, Court remanded claim for readjudication in light of actual facts).

■ Second, the Board failed to provide an analysis of the credibility and pro-

bative value of much of the evidence of record. The Board apparently relied upon the April 1990 VA hospitalization report (the most recent such report in the record) in determining the nature and severity of the veteran's conditions. However, the Board provided no basis for concluding that that report was more credible or probative than the numerous other reports in the record reflecting various diagnoses and evaluations. *See Abernathy*, 3 Vet.App. at 465 (BVA erred in failing to explain why it found recent VA examination report more probative than other reports). In this regard, the Court notes that, under VA regulations, the Board's task is not merely one of choosing which of several examination reports it finds most probative in determining the nature and severity of the veteran's disabilities. Rather, the Board is required to consider and evaluate all relevant medical evidence and to reconcile conflicting reports. This requirement is expressly stated in 38 C.F.R. § 4.2 (1992):

> Different examiners, at different times, will not describe the same disability in the same language. Features of the disability which may have persisted unchanged may be overlooked or a change for the better or worse may not be accurately appreciated or described. It is the responsibility of the rating specialist to interpret reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present.

*See also* 38 C.F.R. § 4.1 (1992) (it is "essential" that "each disability be viewed in relation to its history"); 38 C.F.R. § 4.130 (1992) (in evaluating psychotic disorders, "it is necessary to consider in addition to present symptomatology or its absence, the frequency, severity, and duration of previous psychotic periods, and the veteran's capacity for adjustment during periods of remission"); 38 C.F.R. § 3.340(a)(3) (1992) (ratings of total disability on history); *Schafrath v. Derwinski*, 1 Vet.App. 589, 594 (1991) (evaluations must be "based upon the most complete evaluation of the claimant's condition that can feasibly be constructed").

Therefore, in evaluating the severity of the veteran's disabilities, the Board must discuss the numerous hospitalization reports and seek to reconcile any conflicting diagnoses or evaluations or provide reasons for rejecting any of the medical diagnoses. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991) (BVA may reject medical evidence only on the basis of other medical evidence of record or recognized medical treatises); *see also Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992) (Board must provide adequate quotation from any recognized medical treatise relied upon). In the instant case, the Board failed to consider and discuss whether the numerous different diagnoses reflected the existence of several different conditions or conflicting diagnoses of the same condition or conditions. *See* 38 C.F.R. § 4.128 (1992) (rating boards must exercise caution in determining whether a change in diagnosis represents a progression of an earlier diagnosis, an error in a prior diagnosis, or an independent disease entity). Furthermore, the Board failed to discuss the effect of the veteran's numerous hospitalizations upon his employability, and the August 1988 VA examiner's statement that, due to "numerous psycho-social stresses", the veteran had not been able to handle living outside the hospital (R. at 42). *See* 38 C.F.R. § 3.340(a)(3) (1992) (total disability ratings may be assigned, even if condition has undergone recent improvement, if history shows total disability, including extended, continuous, or intermittent hospitalizations, and veteran is unlikely to be able to effect an adjustment into a substantially gainful occupation). The Board did not discuss the veteran's employment history and experience except to note that the veteran was "not currently steadily employed" and that "[h]is prior work history is not of record." *Genous*, BVA 91–14132, at 3, 5.

■ Furthermore, in evaluating the severity of the veteran's disabilities, the Board failed to discuss the evidence of record in the context of VA's schedule for rating disabilities (rating schedule). Be-

cause the regulatory provisions of 38 C.F.R. §§ 4.16, 4.17, and 4.17a expressly make the schedular evaluation of the veteran's NSC disabilities pertinent to the determination of entitlement to NSC pension, the Board was required to consider and discuss how the rating-schedule provisions applied to evidence pertaining to the veteran's disabilities. *See Roberts v. Derwinski*, 2 Vet.App. 387, 390 (1992) (BVA erred in adjudicating pension claim "without evaluating the veteran's conditions under the schedule of ratings first"). If, upon such evaluation, the Board were to determine that the veteran did not meet the schedular requirements of 38 C.F.R. § 4.16, adopted by reference in 38 C.F.R. §§ 4.17 and 4.17a, it would be required to consider and discuss whether the veteran's claim should be referred to the Adjudication Officer, pursuant to 38 C.F.R. § 4.17(b), for extra-schedular consideration under 38 C.F.R. § 3.321(b)(2) (1992). *See Roberts, supra; cf. Fisher v. Principi*, 4 Vet.App. 57, 60 (1993) (where there may be "exceptional or unusual" circumstances, BVA required to adjudicate issue of whether a claim for total service-connected disability based on unemployability should be referred for extra-schedular consideration under 38 C.F.R. § 3.321(b)(1) (1992)).

Third, the Board failed to explain adequately the basis for and significance of its finding that the veteran's alcohol dependence was due to his own willful misconduct. The Board did not discuss "whether the alcohol problem had any relationship to his psychiatric problems." *Abernathy*, 3 Vet.App. at 465. Furthermore, even if the Board was correct in concluding that the veteran's alcohol problem was due to willful misconduct, it was still required to explain whether, without regard to the alcohol problem, the veteran's remaining disability or disabilities were severe enough to render him permanently and totally disabled. *See* 38 C.F.R. § 4.17a.

Finally, the Board failed to discuss adequately the applicability of the benefit-of-the-doubt rule in 38 U.S.C.A. § 5107(b) (West 1991). The Board concluded that "[t]he *evidence does not show* that the end

result of proper adherence to a treatment regimen for his induced psychotic disorder, and alcohol and drug abuse would nonetheless result in the inability to engage in a substantially gainful occupation." *Genous*, BVA 91–14132, at 4 (emphasis added). However, under section 5107(b), a claimant will prevail when the evidence is in "relative equipoise", and the claim will be denied only if "a fair preponderance of the evidence is against the claim". *Gilbert*, 1 Vet.App. at 55–56. Therefore, the Board apparently applied the wrong standard of proof in requiring the evidence to conclusively establish that the veteran would be unemployable even if he were to undergo treatment and rehabilitation.

*3. Duty to assist:* Where a claimant submits a well-grounded claim for VA benefits, the Secretary has a duty to assist the claimant "in developing the facts pertinent to the claim." 38 U.S.C.A. § 5107(a) (West 1991); *see Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990) (well-grounded claim is a "plausible claim, one which is meritorious on its own or capable of substantiation"). In the instant case, the veteran's claim for NSC pension based on permanent and total disability is plausible in light of the evidence of his numerous hospitalizations for various conditions and the VA physician's opinions that he has been unable to function outside of the hospital and that he "may be" employable for a simple and repetitive job. The Secretary was thus obligated to assist in developing the facts pertinent to that claim. The evidence in the present case includes several different diagnoses by VA physicians regarding from which disabilities the veteran in fact suffers and as to the severity of those disabilities. Moreover, although the record contains several VA hospitalization reports, none of those reports indicates that the veteran has ever been evaluated by a psychiatrist or that any attempt has been made to examine the veteran for purposes of reconciling the various diagnoses. Additionally, there is no current medical evidence in the record reflecting an evaluation of the veteran's other disabilities (syncope, sinus tachycardia, left-ankle fracture, and

hypertension). In light of these facts, the Court holds that the duty to assist in this case requires "the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." *Green (Victor) v. Derwinski,* 1 Vet.App. 121, 124 (1991); *see also Cousino v. Derwinski,* 1 Vet.App. 536, 540 (1991); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). Additionally, the Board will be free on remand to seek an independent medical opinion under 38 C.F.R. § 3.328(a) (1992). *See Cousino, supra.*

■ Furthermore, because the veteran indicated that he may be receiving SSI payments, the Board was obligated to seek to secure records from the Social Security Administration (SSA) pertaining to any SSA determinations as to the veteran's disabilities and his employability. *See Murincsak v. Derwinski,* 2 Vet.App. 363, 370 (1992) (where VA is on notice that claimant is receiving compensation from SSA and the claimant has submitted a well-grounded claim, VA's duty to assist includes duty to seek to obtain and, if obtained, consider all pertinent records from the SSA).

### B. Service Connection

In his brief, the appellant states that in January 1990, while he was an inpatient at a VA hospital, he submitted to VA a communication disagreeing with the March 1989 BVA decision denying service connection for a psychiatric disability and a cardiovascular disorder. He asserts that the BVA should have construed that communication as a claim for service connection for those disabilities and, hence, should have adjudicated those claims. Br. at 6. The record before the Court does not contain any such January 1990 communication, nor any application for benefits leading to the current appeal. On remand, therefore, the Board must examine the documents submitted by the veteran in connection with his current claim to determine whether he reasonably raised claims for service connection for psychiatric and cardiovascular disabilities. If such claims was reasonably

raised by a liberal reading of all documents submitted prior to the BVA decision on appeal, the Board must, on remand, adjudicate those claims or, if appropriate, remand them to the RO. *See EF, supra* (BVA required to review all issues "reasonably raised from a liberal reading" of "all documents or oral testimony submitted prior to the BVA decision"); *see also Bernard v. Brown,* 4 Vet.App. 384, 392 (1993) (BVA may be required to remand reasonably raised claim for adjudication by RO in first instance).

### C. Motion to Supplement Record

■ On March 22, 1993, the appellant filed a motion requesting the Court to order the Secretary to supplement the record with a 1988 letter from the VA to the veteran informing him that he had been awarded service connection. He does not assert that such a letter would be relevant to his claim for NSC pension, but apparently seeks to include it in the record for purposes of his claim for service connection. As noted in part II.B., above, the record before the Court does not reveal whether the veteran had reasonably raised a claim for service connection, and remand is required to resolve that question. The relevance of any such 1988 award letter to the current appeal depends upon whether a claim for service connection was properly before the Board. Therefore, on remand, if the Board concludes that a claim for service connection was reasonably raised to it, it must, in adjudicating such claim, consider all evidence in the veteran's file that may indicate that he has been previously awarded service connection for any of his disabilities.

### III. Conclusion

Upon consideration of the record, the Secretary's motion, and the appellant's informal brief, the Court denies the Secretary's motion for summary affirmance, summarily vacates the May 1, 1991, BVA decision, and remands the matter for prompt further development and readjudication, consistent with this decision, on the basis of all evidence and material of record and all applicable law and regulation. *See*

*Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1992). "On remand, the veteran will be free to submit additional evidence and argument" as to the NSC claim and, if the Board finds that it was reasonably raised, as to the service-connection claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant.

VACATED AND REMANDED.