﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/20 Archive Date: 04/30/20

DOCKET NO. 200221-65030
DATE: April 30, 2020

ORDER

Entitlement to service connection for a right-hand disability, to include degenerative changes of the right hand, to include as secondary to exposure to ionizing radiation and chemicals, is denied. 

REMANDED

Entitlement to service connection for an acquired psychiatric disability, to include anxiety and depression, to include as secondary to exposure to ionizing radiation and chemicals and/or as secondary to degenerative changes of the right hand, is remanded. 

Entitlement to an initial compensable rating for service-connected fungal infection of the feet and atopic dermatitis of the hands, is remanded. 

FINDING OF FACT

A right-hand disability, to include degenerative changes of the right hand is not shown to be causally or etiologically related to any disease, injury or incident in service, to include exposure to ionizing radiation and/or chemicals, and arthritis did not manifest to a compensable degree within one year of service discharge. 

CONCLUSION OF LAW

The criteria for service connection for a right-hand disability, to include degenerative changes of the right hand have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the United States Army from June 1956 to June 1958 and July 1958 to July 1976.

The Board notes that the rating decision on appeal was issued in December 2019, which continued to deny the Veteran’s claims for service connection as well as his claim for an initial compensable rating for his service-connected fungal infection of the feet and atopic dermatitis of the hands. The Veteran timely appealed this rating decision to the Board in February 2020 and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ) under the modernized appeal system. The Board has therefore considered the evidence of record submitted prior to notification of the rating decision with respect to the claims decided therein.

The Board must discuss all theories of entitlement raised by the Veteran or by the evidence of record. Robinson v. Mansfield, 21 Vet. App. 545 (2008).

Accordingly, the Board has recharacterized the claims as indicated above to afford the Veteran the broadest possible scope of review. See Clemons v. Shinseki, 23 Vet. App. 1, 5-6 (2009).

In March 2009, August 2014, February 2016, August 2017, and July 2019, the Board remanded the claims on appeal for further development and adjudication. The Board finds that there was substantial compliance with its prior remand directives regarding the claim decided herein. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D’Aries v. Peake, 22 Vet. App. 97, 104 (2008) (finding substantial compliance where an opinion was provided by a neurologist as opposed to an internal medicine specialist requested by the Board); Dyment v. West, 13 Vet. App. 141 (1999).

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303 (a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). 

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff’d, 78 F.3d 604 (Fed. Cir. 1996). 

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, service connection may be established under 38 C.F.R. § 3.303 (b) by (a) evidence of (i) the existence of a chronic disease in service or during an applicable presumption period under 38 C.F.R. § 3.307 and (ii) present manifestations of the same chronic disease, or (b) when a chronic disease is not present during service, evidence of continuity of symptomatology.

Service connection for disability based on exposure to ionizing radiation can be demonstrated by three different methods. See Rucker v. Brown, 10 Vet. App. 67, 71 (1997). First, there are certain types of cancer that are presumptively service-connected when they occur in “radiation-exposed Veterans.” 38 U.S.C. § 1112 (c); 38 C.F.R. § 3.309 (d). This category of “radiation-exposed Veterans” includes those Veterans who participated in a “radiation-risk activity.” 

“Radiation-risk activity” is defined to mean: onsite participation in a test involving the atmospheric detonation of a nuclear device; the occupation of Hiroshima or Nagasaki, Japan, by United States forces during the period beginning on August 6, 1945, and ending on July 1, 1946; internment as a prisoner of war in Japan that resulted in an opportunity for exposure to ionizing radiation comparable to that of Veterans who were in the occupation of forces of Hiroshima or Nagasaki during the period August 6, 1945, and ending on July 1, 1946; or certain service on the grounds of gaseous diffusion plants located in Paducah, Kentucky; Portsmouth, Ohio; and Oak Ridge, Tennessee; or, in certain circumstances, service on Amchitka Island, Alaska. 38 C.F.R. § 3.309 (d)(ii).

Diseases presumptively service connected for radiation-exposed Veterans under the provisions of 38 U.S.C. § 1112 (c) and 38 C.F.R. § 3.309 (d) are: leukemia (other than chronic lymphocytic leukemia), cancer of the thyroid, cancer of the breast, cancer of the pharynx, cancer of the stomach, cancer of the small intestine, cancer of the pancreas, multiple myeloma, lymphomas (except Hodgkin’s disease), cancer of the bile ducts, cancer of the gall bladder, primary liver cancer (except if cirrhosis or hepatitis B is indicated), cancer of the salivary gland, cancer of the urinary tract, bronchiolo-alveolar carcinoma, cancer of the bone, cancer of the brain, cancer of the colon, cancer of the lung, and cancer of the ovary. 38 U.S.C. § 1112 (c)(2); 38 C.F.R. § 3.309 (d)(2). 

Second, “radiogenic diseases” may be service connected, provided that certain conditions are met, pursuant to 38 C.F.R. § 3.311. To consider a claim under section 3.311, the evidence must show the following: (1) the Veteran was exposed to ionizing radiation in service; (2) he subsequently developed a radiogenic disease; and (3) such disease first became manifest within a period specified by the regulation. 38 C.F.R. § 3.311 (b). If any of the foregoing three requirements has not been met, service connection for a disease claimed as secondary to exposure to ionizing radiation cannot be granted under 38 C.F.R. § 3.311. 38 C.F.R. § 3.311(b)(1)(iii). For purposes of 38 C.F.R. § 3.311, the term “radiogenic disease” means a disease that may be induced by ionizing radiation. 38 C.F.R. § 3.311 (b)(2). 

The regulation states that the term radiogenic disease shall include: (i) All forms of leukemia except chronic lymphatic (lymphocytic) leukemia; (ii) Thyroid cancer; (iii) Breast cancer; (iv) Lung cancer; (v) Bone cancer; (vi) Liver cancer; (vii) Skin cancer; (viii) Esophageal cancer; (ix) Stomach cancer; (x) Colon cancer; (xi) Pancreatic cancer; (xii) Kidney cancer; (xiii) Urinary bladder cancer; (xiv) Salivary gland cancer; (xv) Multiple myeloma; (xvi) Posterior subcapsular cataracts; (xvii) Non-malignant thyroid nodular disease; (xviii) Ovarian cancer; (xix) Parathyroid adenoma; (xx) Tumors of the brain and central nervous system; (xxi) Cancer of the rectum; (xxii) Lymphomas other than Hodgkin’s disease; (xxiii) Prostate cancer; and (xxiv) Any other cancer. 38 C.F.R. § 3.311 (b)(2). 

Third, service connection may be granted under 38 C.F.R. § 3.303 (d) when it is established that disease diagnosed after discharge is the result of exposure to ionizing radiation during active service. See 38 U.S.C. § 1113 (b); Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Entitlement to service connection for a right-hand disability, to include degenerative changes of the right hand, to include as secondary to exposure to ionizing radiation and chemicals, is denied. 

The Veteran contends that he has a right-hand disability, to include degenerative changes of the right hand as a result of his active duty service. Specifically, he contends that such began during service and/or is the result of his alleged in-service exposure to ionizing radiation and/or chemicals. 

The Veteran’s service treatment records reflect that he reported a history of osteoarthritis in his hands and back in September 1975. However, the Veteran’s records are silent for any definitive or confirmed diagnosis. Furthermore, the remainder of the Veteran’s service treatment records are silent for any complaints, treatment or diagnosis of a right-hand disability, to include degenerative changes or symptoms associated with such. However, the Veteran’s service personnel records reflect that he worked in the Nike-Hercules missile program, which is where he alleges, he came into contact with ionizing radiation and/or chemicals to include Toluene and Trichloroethylene. 

The Veteran’s post-service treatment records are silent for any right-hand complaints, to include arthritis, within one year of the Veteran’s discharge from service. X-ray evidence in July 2004 reflected mild degenerative changes in the Veteran’s right hand. However, such determination was disputed by X-ray evidence in 2015, which revealed no significant arthropathy and the examiner found no degenerative changes. However, in 2019 the Veteran’s right-hand degenerative arthritis was confirmed. 

Throughout the Veteran’s appeal, the Veteran has undergone several VA examinations with accompanying disability benefits questionnaires (DBQs). Regarding the Veteran’s right-hand disability claim, he underwent examinations in April 2015, March 2016, May 2018, October 2018 and August 2019. 

In April 2015 the Veteran underwent a Hand and Finger Conditions examination with an accompanying DBQ. The examiner found that the Veteran did not have a current diagnosis associated with his claimed right-hand disability to include degenerative changes. The examiner noted that in July 2004 the Veteran had been diagnosed with degenerative arthritis in the right hand, however the examiner found no evidence of such during his examination. The examiner noted no deformity or hypertrophic hand or finger joints and no swelling of the hand or finger joints. The examiner noted that the Veteran reported that he could not make a fist, but upon examination, the examiner found the Veteran’s range of motion was normal. The examiner found that the Veteran’s mild interphalangeal joint disease was very minimal and had not progressed in the past 10 years, and that he “doubt[ed] it [had] any anatomical or physiological significance.” The examiner noted that the original films had been studied and found no significant arthritis change and the present films of the right hand also showed no fracture or any obvious degenerative changes. The examiner opined that the Veteran’s claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event or illness. The examiner provided the rationale that he reviewed both the July 2004 and April 2015 X-rays and that he did not see any degenerative change at the time or in the older X-rays. The examiner also noted no progression of any disease at the thumb joint. Therefore, the examiner provided his negative opinion as he found no evidence of the claimed condition. 

In March 2016 an addendum and clarification opinion was obtained. The examiner found that “if the lesions would have been present in 2004, they would have progressed after twelve years, however these claimed lesions are not present in the 2015 X-rays. It is [more] likely than not that the initial hand X-rays [were] over read.” However, the Board in its August 2017 remand found that the March 2016 addendum opinion did not adequately address the Veteran’s claim and therefore sought an additional addendum opinion. 

In June 2018 an additional addendum opinion was obtained. The examiner found that the Veteran’s claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner provided the rationale that after reviewing the Veteran’s medical records, which did show evidence of a diagnosis of degenerative disc disease and/or degenerative arthritis of the lumbosacral spine just prior to the Veteran’s discharge in 1975, testing ruled out a diagnosis of rheumatoid arthritis as well as additional studies ruling out ankylosing spondylitis. Furthermore, the examiner found that there was no indication of any arthritic problems in any of the Veteran’s extremities. Furthermore, the examiner found that to the extent that there may now be arthritic changes in the hands of an 81-year old veteran, there is also the question of any evidence of a causal relationship between exposure to organic solvents and the development of arthritis. The examiner cited to two articles and studies which indicated that while there may be a vague association between organic solvent exposure and connective tissue disease, there is no proven evidence of a causal relationship between such exposure and rheumatoid arthritis or any other arthritic condition. Therefore, the examiner concluded that there is no reasonable case for stating a causal connection between the Veteran’s active duty service and his current hand problems. However, the Board in its July 2019 remand found the June 2018 opinion to be inadequate and requested an addendum opinion. 

In August 2019 again an addendum opinion was obtained. The examiner noted a thorough review of the Veteran’s claims file and medical records, to include the Veteran’s service treatment records which reflected degenerative arthritis of the spine in 1975 and spinal X-rays in 1976, but no indication of osteoarthritis in the hands other than the Veteran’s self-reported history, and the X-rays taken in July 2004 as well as the subsequent X-rays in 2015. The examiner opined that the Veteran’s claimed right-hand condition was less likely than not incurred in or caused by the claimed in-service injury, event or illness. The examiner found no evidence of any right had disability in-service or within one year of the Veteran’s discharge. Furthermore, the examiner noted that the medical literature did not support a causal association between ionizing radiation, Toluene or Trichloroethylene and degenerative arthritis. Rather, the examiner found that the Veteran’s degenerative arthritis of the right hand was due to the natural aging process. 

The Board notes that the Veteran has a current right-hand disability, to include degenerative changes in his right hand, specifically arthritis; therefore, the first element of service connection, whether for direct or presumptive service connection, is met. 

The Board has first considered whether the Veteran’s disability warrants presumptive service connection under the regulations governing ionizing radiation exposure. As previously noted, there are three ways in which to establish service connection for a disability based on exposure to ionizing radiation. First, the Board notes that the Veteran has not participated in a “radiation-risk activity.” While acknowledging the Veteran’s possible exposure to radiation as a Nike-Hercules crewman, the Board finds that the Veteran is not a “radiation-exposed” veteran within the meaning of the regulation as there is no evidence, and the Veteran does not contend, that he participated in any of the radiation-risk activities listed by the regulation. As he is not a “radiation-exposed” veteran, the presumptive provisions of U.S.C. § 1112(c) and 38 C.F.R. § 3.309 (d) are not applicable. Furthermore, arthritis is not subject to presumptive service connection under 38 U.S.C. § 1112 (c); 38 C.F.R. § 3.309 (d). 

Second, arthritis is not a recognized “radiogenic disease” under 38 C.F.R. § 3.311 (b)(2), and finally there is no indication that arthritis was caused by any radiation exposure during service. Therefore, presumptive service connection is not warranted. However, regardless of the ionizing radiation presumptive provision, direct and presumptive service connection, including service connection for chronic disease, are still available to the Veteran.

As for presumptive service connection and service connection based on continuity of symptomatology, while arthritis is a chronic disease subject to such forms of service connection, the objective evidence of record does not reflect that such developed to a compensable degree within one year of the Veteran’s discharge from service. Rather, even in the light most favorable to the Veteran, he was not diagnosed with arthritis until 2004, approximately 28 years after his discharge from service. Furthermore, there is no indication of any continuity of treatment or complaints of arthritis. Therefore, presumptive service connection or service connection based on continuity of symptomatology is not warranted. 

As far as direct service connection, the Board notes that while the Veteran’s service treatment records reflect that he reported a history of osteoarthritis, they are silent as to any complaints, treatment or confirmed diagnosis of degenerative changes in the right hand. In addition, the Veteran did not exhibit symptoms of or was diagnosed with any right-hand disabilities within one year of service discharge. Therefore, the Board notes that even in the light most favorable to the Veteran, the in-service element of direct service connection is not met. 

Furthermore, as for the nexus element of direct service connection, the VA examiner in August 2019, opined that the Veteran’s right-hand disability was less likely than not incurred in service or as a result of any claimed in-service injuries, to include his claimed in-service exposure to ionizing radiation and/or chemicals. The examiner noted no evidence supporting a causal relationship between arthritis and ionizing radiation or chemical exposure. Furthermore, the examiner found no evidence of arthritis in the Veteran’s service records or within one year following his discharge. The examiner noted that the Veteran’s arthritis was more likely due to the aging process as such is associated with the wearing down of the joints and is common in the Veteran’s age group. This opinion offered clear conclusions with supporting data as well as a reasoned medical explanation connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (“[A]medical opinion... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions”). Therefore, the Board affords great probative weight to the August 2019 VA examiner’s opinion. Furthermore, the Board notes that there are no contrary opinions of record. As the Veteran is missing essential elements of direct service connection, direct service connection is not warranted. 

The Board has also considered the lay statements of the Veteran, which indicated that his right-hand disability is related to his military service. In this regard, a layperson is competent to report on that of which he or she has personal knowledge. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). A lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as a fall leading to a broken leg. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).

However, the question of causation of a right-hand disability, to include arthritis involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. In this regard, such an opinion requires specialized knowledge of the musculoskeletal system. There is no indication that the Veteran possesses such specialized knowledge and there is no indication that he had specialized training that would render him competent to render medical diagnosis. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the lay opinion of the Veteran regarding the etiology of his right-hand disability, to include degenerative changes is non-probative evidence. See Jandreau, supra; Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). 

Moreover, the Veteran has offered only conclusory statements regarding the relationship between his right-hand disability, to include degenerative changes and his active duty service. In contrast, the August 2019 examiner took into consideration all the relevant facts in providing his opinion. Therefore, the Board accords great probative weight to the VA examiner’s opinion.

Consequently, the Board finds that the Veteran’s right-hand disability, to include degenerative changes, is not shown to be causally or etiologically related to a disease or injury incurred in or aggravated during active service. Therefore, service connection for such claimed disability is not warranted. 

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran’s claim of entitlement to service connection for right hand disability, to include degenerative changes. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert, 1 Vet. App. at 49.

REASONS FOR REMAND

Although the Board regrets the delay, a remand is necessary to ensure that there is a complete record upon which to decide the Veteran’s remaining claim. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159.

After reviewing the evidence of record, the Board finds that the issues of service connection for an acquired psychiatric disability, to include anxiety and depression, to include as secondary to exposure to ionizing radiation and chemicals and/or as secondary to degenerative changes of the right hand and entitlement to an initial compensable rating for service-connected fungal infection of the feet and atopic dermatitis of the hands must be remanded to correct duty to assist errors that occurred prior to the December 2019 AMA rating decision.

Entitlement to service connection for an acquired psychiatric disability, to include anxiety and depression, to include as secondary to exposure to ionizing radiation and chemicals and/or as secondary to degenerative changes of the right hand, is remanded. 

The Veteran alleges that he suffers from an acquired psychiatric disability as a result of his active duty service. Specifically, he contends that such is the result of exposure to ionizing radiation and/or chemicals during service or in the alternative that such is secondary to his degenerative changes of the right hand. 

VA’s duty to assist includes a duty to provide a medical examination or obtain a medical opinion where it is deemed necessary to make a decision on the claim. 38 U.S.C. § 5103A (d); 38 C.F.R. § 3.159 (c)(4); Duenas v. Principi, 18 Vet. App. 512 (2004); Robinette v. Brown, 8 Vet. App. 69 (1995); McLendon v. Nicholson, 20 Vet. App. 79 (2006). In addition, once VA undertakes the effort to provide an examination when developing a service connection claim, even if not statutorily obligated to do so, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). For below noted reasons, the Board finds that an additional VA examination is needed to determine the nature and etiology of the Veteran’s acquired psychiatric disability.

The Veteran’s service treatment records are silent for any complaints, treatment or diagnosis of a mental health disability. However, the Veteran’s service personnel records reflect that he worked in the Nike-Hercules missile program. Furthermore, post-service the Veteran was diagnosed with unspecified depressive disorder and unspecified anxiety disorder. 

In April 2015 the Veteran underwent a VA Mental Disorders examination. The examiner diagnosed the Veteran with unspecified depressive disorder. The examiner found that it was beyond the scope of his practice to opine or comment and/or speculate on whether the Veteran developed any disability manifested as memory deficits secondary to exposure to the chemical Trichloroethylene or any memory loss aggravation due to the exposure to the chemical Trichloroethylene. The examiner found that it was beyond the scope of his practice to opine or comment and/or speculate regarding the relationship between the Veteran’s mental health diagnosis and exposure to radiation and/or to the chemical Trichloroethylene. The examiner opined that the Veteran’s unspecified depressive disorder was at least as likely as not due to his concerns about his medical conditions that he believes were the result of exposure to radiation and chemicals. The examiner found that it was important to note that it was the Veteran’s belief and subsequent concerns that he was experiencing physical problems secondary to exposure that was the most likely cause of his depression. The examiner further stated that it if it was determined that the Veteran’s headaches, complaints of memory loss, skin condition, diffuse atrophy, and degenerative changes in his right hand were due to the exposure to radiation and exposure to the chemical Trichloroethylene then in that case his unspecified depressive disorder would most likely be secondary to those conditions. 

In October 2016 an addendum opinion was obtained. The examiner first found that the prior diagnosis had been erroneous and that the Veteran’s proper diagnosis was unspecified anxiety disorder. The examiner also opined that it was less likely than not that the Veteran’s unspecified anxiety disorder was secondary to his service-connected atopic dermatitis. Furthermore, the examiner found that it was less likely than not that the Veteran’s unspecified anxiety disorder was aggravated beyond its natural progression by his service-connected atopic dermatitis. The examiner provided the rationale that it was more likely that the Veteran’s anxiety caused the false belief that his hand condition as related to his exposure to radiation and/or chemicals, as the Veteran’s anxiety clearly predated his concerns about his hands and continued despite his concerns about his hands resolving. The examiner noted that in individuals with anxiety, the focus of their worry is frequently variable depending on which events are predominant now. 

The Board notes that while the October 2016 examiner discussed the Veteran’s secondary theory of entitlement, neither the April 2015 nor the October 2016 examiner adequately addressed direct service connection or whether the Veteran’s claimed exposure to radiation and/or chemicals in service caused his mental health disability. Considering these deficiencies, the Board finds that the AOJ committed a duty to assist error by adjudicating the Veteran’s claim prior to providing him with an adequate VA medical opinion. See Abernathy v. Principi, 3 Vet. App. 461, 464 (1992). As such, remand is warranted.

 

Entitlement to an initial compensable rating for service-connected fungal infection of the feet and atopic dermatitis of the hands is remanded. 

The Veteran contends that the severity of his fungal infection of the feet and atopic dermatitis of the hands warrants a higher rating than is currently assigned. 

The Veteran’s service-connected fungal infection of the feet and atopic dermatitis of the hands is currently rated as noncompensable under Diagnostic Codes 7813-7806. Hyphenated diagnostic codes are used when a rating under one code requires use of an additional diagnostic code to identify the basis for the rating. 38 C.F.R. § 4.27. Here, the hyphenated diagnostic codes indicate that the Veteran’s fungal infection of the feet and atopic dermatitis of the hands are rated, by analogy, under the criteria for dermatophytosis (Diagnostic Code 7813) and dermatitis or eczema (Diagnostic Code 7806). 

Diagnostic Codes 7806 and 7813 are rated under the General Rating Formula for the Skin. The Board notes that a compensable rating under the General Rating Formula for Skin requires at least 5 percent of the entire body be affected: or at least 5 percent of the exposed area of the body be affected; or intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period.

Throughout the Veteran’s appeal, he has undergone several VA examinations with accompanying DBQs. Regarding the Veteran’s service-connected fungal infection of the feet and atopic dermatitis of the hands, he underwent examinations in April 2015, March 2016, May 2018, October 2018 and August 2019. 

In April 2015 the Veteran underwent a Skin Diseases examination. The examiner noted that the Veteran had atopic dermatitis of his hands and dermatomycosis and dry skin. The Veteran reported that he worked 16-17 years with nuclear weapons. He stated that he cleaned launchers, rails and cables with Trichlorethylene. He stated that he was not provided with protective equipment and that his skin became wrinkled, itchy ad started to peel-off and became reddish. He stated that he started treating his skin with over the counter creams and later was given emollient creams. The examiner found that the Veteran’s conditions did not cause scarring of the head, face or neck and that the Veteran did not have any benign or malignant skin neoplasms or systemic manifestations. The examiner found that the Veteran had been treated with topical medications for 6 weeks or more, but not constant. The examiner noted that the Veteran had not had any treatments or procedures other than topical medications in the past 12 months and no debilitating or non-debilitating episodes. 

Upon examination, the examiner noted that the Veteran’s eczema affected less than 5% of his total body area and less than 5% of his exposed area. His infections of the skin affected less than 5% of his total body area and less than 5% of his exposed area. The examiner noted that the Veteran’s skin on his palms was minimally wrinkled, dry, cracked and peeled-off. The examiner found that such was more obvious around the creases. 

In March 2016 the Veteran underwent an additional examination. The examiner noted that the Veteran’s dermatomycosis had resolved due to a combination of medications taken from January 2005 to March 2005. However, the examiner noted that the Veteran still had atopic dermatitis of the hands and dry skin. However, the examiner did not discuss the degree to which such conditions impacted the Veteran or their symptoms. The Board in its August 2017 remand directed that an additional examination was to be performed and that the examiner was to address the severity of the Veteran’s skin disability on an annual basis from January 2004 to the present. Furthermore, the examiner was to discuss the type of medication used by the Veteran to treat the atopic dermatitis and whether any of the medications included systemic therapy such as corticosteroids or other immunosuppressive drugs. Specifically, the Board noted that the Veteran was treated with Elidel, which appeared to be an immunosuppressant. 

Pursuant to the Remand instructions, the Veteran was provided with an examination in October 2018. The examiner noted that the Veteran had dermatitis or eczema, which resulted in the wrinkling of the skin in palmar aspect of both hands, and that such was treated within the past 12 months with topical and oral medications. Upon examination, the examiner noted that the Veteran’s dermatitis affected less than 5% of his total body and less than 5% of his exposed area. The examiner found no benign or malignant neoplasms and no scarring or disfigurement of the head, face or neck. The examiner noted no debilitating or non-debilitating episodes. The examiner found that the Veteran’s atopic dermatitis affected a total area of 2 % of the Veteran’s body. He also noted that the Veteran was treated for his atopic dermatitis with emollients, Elidel cream, Terbinafine cream and Terbinafine 250mg daily. The examiner found that while the Veteran was on Terbinafine daily, such was not a corticosteroid or other immunosuppressive therapy drug. 

However, the Board noted in its July 2019 Remand that it did not appear that the examiner fully complied with the Remand instructions. While the examiner provided a brief discussion of the severity of the skin disability for several years, he did not do so on an annual basis as per the Board instructions. Furthermore, the examiner did not discuss whether the Emollients and Elidel cream were corticosteroids or other immunosuppressive therapy drugs and, if so, whether such use was intermittent for a total duration of less than six weeks during the prior 12 month period; whether such use was required for a total duration of six weeks or more, but not constantly, during the prior 12 month period; or whether such use was constant or near-constant during the prior 12 month period. For these reasons, the Board found the October 2018 opinion to be inadequate and ordered a new examination on remand. 

The Board however finds that the RO did not comply with the Board’s July 2019 remand instructions. While there is a notice in August 2019 of a cancellation of a Dermatological examination for the reason of “no show,” there is no indication in the record that the Veteran was sent a scheduling notice or that an examination was ever scheduled. Accordingly, the AOJ committed a duty to assist error by adjudicating the Veteran’s claim prior to providing him an adequate VA medical opinion. See Abernathy, 3 Vet. App. at 464. Therefore, the Board finds that remand is warranted.

The matters are REMANDED for the following action:

1. The Veteran should be provided with a VA examination to determine the nature and etiology of his claimed acquired psychiatric disability. The claims file should be made available to the examiner. 

The examiner should respond to the following:

A) Identify all manifestations and any diagnoses of an acquired psychiatric disability that the Veteran currently has or has had during the course of his appeal. 

(1) Is it at least as likely as not (i.e., 50 percent or greater probability) that the Veteran’s acquired psychiatric disability is related to his service, to include his claimed in-service exposure to ionizing radiation and/or chemicals, to include to include Toluene and Trichloroethylene? 

A complete medical rational for all opinions expressed must be provided.

2. The Veteran should be provided with a VA examination to determine the nature and severity of his service-connected fungal infection of the feet and atopic dermatitis of the hands. Arrangements should be made to return this case to the dermatologist who prepared opinions in the case in October 2018 for an addendum, if possible. After reviewing the expanded record, the examiner should prepare a supplemental report addressing each of the following questions:

From January 2004 to the present, for each calendar year, the examiner should fully describe the following: 

(A) The percentage that the atopic dermatitis and fungal infection covers of the Veteran’s entire body and exposed area. 

(B) The type of medication used by the Veteran to treat the atopic dermatitis and fungal infection and whether any of the medication, including Emollients and Elidel cream, includes systematic therapy such as corticosteroids or other immunosuppressive drugs. 

(C) If the Veteran is found to use or have used systemic therapy such as corticosteroids or other immunosuppressive drugs, whether such use is intermittent for a total duration of less than six weeks during the prior 12 month period; whether such use is required for a total duration of six weeks or more, but not constantly, during the prior 12 month period; or whether such use is constant or near-constant during the prior 12 month period. 

A complete medical rationale for all opinions expressed must be provided.

 

 

L. M. BARNARD

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Unger, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.